Johnnie Lee BILLINGTON,
Plaintiff-Appellant,

v.

Lewis C. UNDERWOOD, individually and as Executive Director of the Housing Authority of the City of Tifton, Georgia, et al., Defendants-Appellees.

No. 79–2669
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 6, 1980.

* Fed.R.App.P. 34(a); 5th Cir. R. 18.

Fred L. Cavalli, R. Graham Clarke, Valdosta, Ga., Lois R. Goodman, John L. Cromartie, Jr., Atlanta, Ga., for plaintiff-appellant.

Crosby & Kelley, David J. Kelley, Tifton, Ga., for defendants-appellees.

Before GEE, HENDERSON and HATCHETT, Circuit Judges.

PER CURIAM:

In April 1978, appellant Johnnie Lee Billington applied to the Housing Authority of the City of Tifton, Georgia,[1] for an apartment in a publicly subsidized housing project. On April 20, 1978, Mr. Billington's counsel informed the housing authority that his current landlord had filed a dispossessory warrant against him but that the action had been dismissed by a justice of the peace after a hearing. On June 1, 1978, the housing authority informed Mr. Billington by letter that he had been found ineligible[2] for public housing because his "previous housing records and habits indicate a detrimental effect on tenants and project environment." Five days later Mr. Billington, through his attorney, requested a hearing on his denial of public housing eligibility. On June 14 a meeting was held at the offices of Mr. David Kelley, legal counsel for the Tifton Housing Authority. Present at this meeting, in addition to Mr. Kelley, were the housing authority's executive officer, Mr. Lewis Underwood, and its office manager, Ms. Bobbie Green, Mr. Billington, and Mr. Billington's counsel. None of the housing authority officials participated in the meeting in the role of impartial hearing officer.

At the meeting, housing authority legal counsel Kelley informed Mr. Billington that the denial of his eligibility for public housing was final and asserted that Mr. Billington was ineligible because allegedly he had failed to pay an unidentified bill approximately five years earlier, had illegally lived in a housing authority project at some unspecified time, had been declared a "bad" tenant by his former landlord, and had been accused by a former sheriff of illegally selling liquor. Mr. Billington was not informed of the specific factual bases underlying these accusations, nor was he accorded a subsequent hearing at which to present evidence refuting the charges first unveiled to him at the June 14 meeting. Mr. Billington, unable to prepare evidence specifically

1. The Tifton Housing Authority is a federally subsidized, state chartered, locally administered corporate body established pursuant to Ga.Code Ann. § 99–1101 et seq. Its actions are taken under color of state law. *See Holmes v. New York City Housing Authority*, 398 F.2d 262 (2d Cir. 1968).

2. A dispute exists between the litigants as to whether Mr. Billington had been declared initially eligible before his application was reverified and he was found ineligible on June 1, 1978. Since Mr. Billington challenges his ultimate status of ineligibility, this contested matter of fact is irrelevant to our holding in the present case.

countering the charges levied against him, contended generally that the stated bases for denying his eligibility had no basis in fact or law.

Having received no favorable action from the housing authority, Mr. Billington filed suit in district court under the Civil Rights Act of 1871, 42 U.S.C. § 1983, challenging the housing authority's procedures for determining eligibility as violative of the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 et seq. (1970), and of the regulations promulgated thereunder. He also claimed that the housing authority's post-rejection hearing was inadequate under the due process clause of the fourteenth amendment and that as a result he was unlawfully deprived of his property interest in being fairly considered for public housing eligibility. Mr. Billington sought injunctive relief that would provide, among other things, written notice of the factual basis of his ineligibility and an evidentiary hearing in which he would be accorded an opportunity to refute any evidence relied upon by the housing authority in rejecting his application for public housing.

The court below granted the housing authority's motion for summary judgment on the pleadings and ruled against Billington. It found that the housing authority had complied with its own regulations for according post-denial eligibility hearings and that Mr. Billington had not demonstrated any deprivation of due process rights. Because we find that the Tifton Housing Authority did not accord appellant Billington the "informal hearing" mandated by federal law and regulations, we reverse without reaching the constitutional issues raised in this case.

■ Federal Regulation 24 C.F.R. § 860.-207(a) (1979), promulgated pursuant to the United States Housing Act of 1937, as amended, 42 U.S.C. § 1401 et seq. (1970), requires the housing authority to

promptly notify any applicant determined to be ineligible for admission to a project of the basis for such determination and . . . [to] provide the applicant upon request, within a reasonable time after

the determination is made, with an opportunity for an informal hearing on such determination.

Clearly the housing authority must follow its own procedure. Morton v. Ruiz, 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974); Vitarelli v. Seaton, 359 U.S. 535, 539–40, 79 S.Ct. 968, 972–973, 3 L.Ed.2d 1012 (1959); Hollingsworth v. Harris, 608 F.2d 1026, at 1027 (5th Cir. 1979). Therefore, Mr. Billington was certainly entitled to the "informal hearing" mandated by the applicable federal regulation.

■ Our understanding of the essential elements of the informal hearing is shaped by the statutory policy that safe and sanitary housing be provided for eligible low-income families. United States Housing Act of 1937, as amended, 42 U.S.C. § 1437 (1976) (formerly section 1401 (1937)). See Thorpe v. Housing Authority of City of Durham, 393 U.S. 268, 89 S.Ct. 518, 21 L.Ed.2d 474 (1969). This policy dictates that persons eligible for public housing have their applications fully and fairly considered. Cf. id. 89 S.Ct. at 525–26 ("One of the specific purposes of the federal housing acts is to provide 'a decent home and a suitable living environment for every American family' that lacks the financial means of providing such a home without governmental aid. A procedure requiring housing authorities to explain why they are evicting a tenant who is apparently among those people in need of such assistance certainly furthers this goal," quoting section 2 of Housing Act of 1949, 42 U.S.C. § 1441 (footnote omitted)). While the regulatory phrase "informal hearing" is not explicit in its requirements, we interpret it in light of decisions in other contexts specifying minimal procedures deemed necessary to promote the accuracy of administrative agencies' factual determinations of the sort involved here. See Robbins v. United States Railroad Retirement Board, 594 F.2d 448, 451–53 (5th Cir. 1979) (interpreting nonprecise "fair hearing" provision of the Railroad Unemployment Insurance Act, 45 U.S.C. § 355(c) (1976), to require at least advance notice of the exact adverse information upon which the government re-

lied in making its decision and an opportunity to rebut that evidence).

■ The June 14, 1978, meeting was defective as an "informal hearing" in several respects. First, Mr. Billington was not provided with an adequate statement of the basis for the housing authority's determination that he was ineligible for public housing. Such a statement must be sufficiently specific for it to enable an applicant to prepare rebuttal evidence to introduce at his hearing appearance. *See id.* at 451. *See also Mathews v. Eldridge*, 424 U.S. 319, 345–46, 96 S.Ct. 893, 907–908, 47 L.Ed.2d 18 (1976) (noting, in approving procedure for determining entitlement to disability insurance payments under the Social Security Act, 42 U.S.C. § 423 (1956), that the information relevant to the entitlement decision is identified with particularity and the disability recipient's representative is allowed full access to all information relied upon by the state agency); *Wolff v. McDonnell*, 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974) ("Part of the function of notice is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact."); *Greene v. McElroy*, 360 U.S. 474, 496, 79 S.Ct. 1400, 1413, 3 L.Ed.2d 1377 (1959) ("where governmental action seriously injures an individual, and the reasonableness of the action depends on fact findings, the evidence used to prove the Government's case must be disclosed to the individual so that he has an opportunity to show that it is untrue."). Indeed, another federal regulation governing the housing authority requires it to document information relevant to the ac-

ceptance or rejection of an applicant and to include in such documentation "[a]s a minimum, . . . the date, the source of the information, including the name and title of the individual contacted, and a resume of the information received." 24 C.F.R. § 860.260(a) (1979). The purpose of safeguarding against error in housing authority eligibility decisions that undergirds regulation section 860.260(a) also animates the 24 C.F.R. § 860.207(a) requirement that the agency notify the rejected applicant of the basis for its determination. Therefore, equivalent detail in the statement of reasons given the rejected applicant is required in order to enable him to test the veracity of the agency's findings against him.

In the present case the housing authority merely parrotted the broad language of the regulations when it wrote Mr. Billington that his record indicated that his presence would likely have a detrimental effect on tenants and project environment. *See* 24 C.F.R. § 860.205(b) (1979).[3] The more detailed statement of reasons offered by the housing authority at the June 14 meeting was not only untimely but also remained insufficient to permit Mr. Billington to defend adequately against the truth of the housing authority's bases for rejecting him. The housing authority's legal counsel did not specifically disclose what bill Mr. Billington allegedly had failed to pay, nor did it give the source of this putative information. Similarly, the statement of "reasons" did not identify the evidentiary basis for charging Mr. Billington with having lived illegally in public housing, nor did it explain what he had done to be considered a "bad" tenant

---

**3.** Regulation 24 C.F.R. § 860.205(b) (1979) states that:

The criterion to be established in relation to avoiding concentration of families with serious social problems in PHA projects and information to be considered shall be reasonably related to whether the conduct of the applicant in present or prior housing has been such as would not be likely to interfere with other tenants in such a manner as to eliminate their enjoyment of the premises by adversely affecting their health, safety, or welfare or to affect adversely the physical environment or the financial stability of the project if the applicant were admitted to the

project. Relevant information respecting habits or practices to be considered may include, but is not limited to—(1) an applicant's past performance in meeting financial obligations, especially rent; (2) a record of disturbance of neighbors, destruction of property, or living or housekeeping habits at prior residences which may adversely affect the health, safety or welfare of other tenants; and (3) a history of criminal activities involving crimes of physical violence to persons or property and other criminal acts which would adversely affect the health, safety or welfare of other tenants.

by his landlord. Mr. Billington also was not provided with the details, such as the alleged dates and sources of information, of the charge by a "former sheriff" that he had illegally sold liquor. He thus could not prepare to test adequately the veracity of the housing authority's determination of his ineligibility, in contradiction of the purpose of the United States Housing Act of 1937 and the regulations implemented thereunder.

Second, the June 14, 1978, meeting was inadequate as an "informal hearing" because no impartial hearing officer was present. The very notion of a hearing, however informal, connotes that the decision maker will listen to the arguments of both sides before basing a decision on the evidence and legal rules adduced at the hearing.[4] *See, e. g., Goldberg v. Kelly*, 397 U.S. 254, 271, 90 S.Ct. 1011, 1022, 25 L.Ed.2d 287 (1970); *In re Murchison*, 349 U.S. 133, 75 S.Ct. 623, 99 L.Ed. 942 (1955); *Wong Yang Sung v. McGrath*, 339 U.S. 33, 70 S.Ct. 495, 94 L.Ed. 616 (1950); *Ohio Bell Telephone Co. v. Puc*, 301 U.S. 292, 57 S.Ct. 724, 81 L.Ed. 1093 (1937). In the instant action Mr. Billington was permitted to appear before the housing authority for the purpose of having explained to him the reasons for its final decision denying him eligibility for public housing. The housing authority had already determined "finally" that Mr. Billington was ineligible, and it believed it only had to offer him reasons for this decision in order to comport with federal regulations. There was no one present to hear with open ear and open mind any counterarguments Mr. Billington could muster. The structure of the meeting thus did not provide a "hearing" of any sort, formal or informal.

These same inadequacies meant that Mr. Billington did not receive a genuine opportunity to be heard in order to refute the basis given for his public housing ineligibility. Not having been provided detailed charges against him and a reasonable opportunity to prepare a rebuttal and not having been provided an opportunity to appear before an impartial tribunal, he was not enabled to contest meaningfully the given rationale for the housing authority's unfavorable action. The regulation requiring an informal hearing was therefore not satisfied. *See, e. g., Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965) (hearing must be "at a meaningful time and in a meaningful manner"); *Grannis v. Ordean*, 234 U.S. 385, 394, 34 S.Ct. 779, 783, 58 L.Ed. 1363 (1914) ("The fundamental requirement of due process of law is the opportunity to be heard.").

The hearing mandated by the applicable regulation may be informal in that it need not conform to the rigors of formal evidentiary rules, need not afford cross examination, need not be transcribed, and need not issue in a formal written decision of the hearing officer's findings of fact and conclusions of law. But to serve its purpose under the statute, the post-termination hearing must provide the minimum criteria we have specified.

REVERSED and REMANDED.

---

4. The impartial hearing officer criterion can be satisfied by an agency hearing officer who is not pecuniarily interested in the outcome of the proceeding and who has no marked personal feelings about the result. *See, e. g., Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 1665–66, 40 L.Ed.2d 15 (1974) (White, J., concurring in part and dissenting in part); *Ward v. Village of Monroeville*, 409 U.S. 57, 93 S.Ct. 80, 34 L.Ed.2d 267 (1972); *Mayberry v. Pennsylvania*, 400 U.S. 455, 91 S.Ct. 499, 27 L.Ed.2d 532 (1971); *Tumey v. Ohio*, 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927). It is not necessary that the hearing officer be an administrative law judge, nor is it required that the hearing officer have had no involvement in the case before the post-denial hearing, a circumstance that, while certainly desirable, is often difficult to achieve in a small municipal housing authority and that is not absolutely necessary for the achievement of fairness in the decision.