Bobby SINGLETON and Irene Singleton, Individually and on behalf of all other persons similarly situated, Plaintiffs,

v.

William Ryan DREW, Individually and in his official capacity as Executive Director and Secretary of the Housing Authority of the City of Milwaukee; the Housing Authority of the City of Milwaukee, a public body corporate and politic, and their agents, employees, successors in office, assistants, and all others acting in concert or cooperation with them or at their direction or under their control, Defendants.

Civ. A. No. 79–C–166.

United States District Court, E. D. Wisconsin.

March 13, 1980.

Lawrence G. Albrecht, James A. Gramling, Jr., and Mary M. Gundrum, Legal Action of Wisconsin, Inc., Milwaukee, Wis., for plaintiffs.

Mary Ellen Poulos, Asst. City Atty., Milwaukee, Wis., for defendants.

## DECISION AND ORDER

TERENCE T. EVANS, District Judge.

This is an action brought on behalf of applicants for public housing in the City of Milwaukee seeking, in part, an injunction to require the city to extend procedural due process to those whose applications are rejected. Pending before the Court are a motion for class certification and a motion for partial summary judgment. The motions will be granted as indicated below.

Plaintiffs have moved for the certification of a class "consisting of all applicants for public housing operated by the Housing Authority of the City of Milwaukee whose applications have been, are being, or will be denied by the defendants". (Complaint, ¶ 6). They claim that approximately 50 people per year are members of the potential class, and that the requirements for certification in Rule 23(a) and 23(b)(2), Federal Rules of Civil Procedure, are met.

Rule 23(a) provides for certification of a class if:

* * * (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

These requirements are met. The class, consisting of 50 or so persons per year, involves 202 applicants since 1974. It is, therefore, sufficiently large. *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326 (7 Cir., 1969). As to the second and third requirements, defendants state that they do not argue with the assertion that "all applicants are entitled to identical procedural protections under the law". Since procedural protections are the very subject of the class aspects of this action, requirements (2) and (3) are met. Finally, the representative parties in this action will adequately represent and protect the interests of the class.

The final requirement for certification is that one of the requirements set forth in Rule 23(b) must also be met. This action falls within Rule 23(b)(2):

* * * the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; * * *

The Court finds that certification of a class as defined in the complaint is appropriate.

Plaintiffs have also filed a motion for summary judgment on the class claims for declaratory and injunctive relief set forth in ¶¶ 27 and 28 of the complaint.[1] As a factual basis for decision on the motion, the parties have filed a detailed Joint Statement of Stipulated Facts. These facts are appended to this decision and adopted as the Court's findings of fact.

The Housing Authority of the City of Milwaukee (HACM) is "a public housing agency" as defined in 42 U.S.C. 1437a(6). Applicants for public housing with the Authority must file a written application

---

1. The motion does not encompass the Singletons' claim for money damages.

which, if a vacancy exists, is reviewed to determine financial eligibility. Following the financial determination, the application is assigned to the Community Services Division (CSD) which, under the direction of the Assistant Director of Resident Services, performs a home visit to investigate an applicant's acceptability for public housing. If the Investigators determine that an applicant is ineligible, one of seven grounds for rejection is marked on a form entitled "Summary Form-Rejected Applicants". This recommendation is reviewed by the Director of the CSD and the Assistant Director of Resident Services. Their decision becomes the final decision of HACM. A form letter of rejection is sent to the applicant setting forth the grounds for rejection solely in terms contained on the "Summary Form-Rejected Applicant". In the case of the named plaintiffs, the rejection form stated:

> "Conduct which would interfere with other tenants and diminish their enjoyment of the premises."

No factual basis for the determination is set forth in the letter nor are time limits imposed on any stage of the procedures outlined above.

Until 1977, rejected applicants could appeal their denial by use of the HACM grievance procedure. Since 1977, those denied eligibility are given the following rights:

> In the event of rejection, the Tenant Services Section will inform the applicant in writing and terminate the application. * * * The letter will inform the applicant that he/she may contact the Assistant Secretary concerning any questions. Questions received from applicants rejected after the home visit will be directed to the Assistant Secretary for followup. *Housing Authority City of Milwaukee Policy and Procedures Manual,* p. 5.

Since January 1, 1977, 50 rejected applicants have questioned the determination of ineligibility. The "hearings" which have been held in response to an appeal are, in effect, meetings conducted by the Management Administrative Assistant II (Mary Boyce) and the Assistant Director for Resi-

dent Services of CSD (Susan July). CSD, as noted above, makes the home visit, and the Assistant Director is one of the persons whose decision is considered during the review. HACM generally does not present witnesses during the review procedure although the applicant is allowed to present witnesses. No oaths are taken; no record is made; no subpoenaes are issued; and the evidence is not restricted to the grounds for ineligibility set forth in the written notice. At the conclusion of the meeting, it is not unusual for the two persons who conducted the examination to obtain additional evidence. Together they make a decision which is the final decision of HACM. The applicant is notified of the result by letter. The letter does not set forth the evidence relied on to support the denial of the application. The only review of the decision of HACM is by writ of *certiorari.* To date, no rejected applicant has sought judicial review on a writ.

Plaintiffs contend that these procedures violate the due process clause of the Fourteenth Amendment; the United States Housing Act, 42 U.S.C. 1437d(c)(3), the Regulations of the Department of Housing and Urban Development (HUD); and Chapter 68, Wis.Stats. HACM contends that it complies fully with 42 U.S.C. 1437d(c)(3) and the HUD regulation, and that the plaintiffs are not entitled to the protections of the due process clause or Chapter 68, Wisconsin Statutes.

Whether the situation at hand requires an excursion into the murky waters of due process entitlement is questionable in this case. The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property. Plaintiffs argue that the right of admission to public housing is a property interest protected by the due process clause. Rejection of an application, the argument runs, must therefore be accompanied by an umbrella of due process rights. The defendants contend that an application for public housing and the procedures for acceptance or rejection fall short of the genre

of "property interests" singled out for due process protection.

Once an applicant for public housing is accepted and becomes a tenant, there can be no doubt that a "property interest" is created, entitling the tenant to protections of the due process clause. *Caulder v. Durham Housing Authority*, 433 F.2d 998 (4 Cir., 1970). Is a significant "property interest" in existence before an applicant is accepted? The answer seems to lie in a grey area. While courts have consistently and wisely eschewed rigid limitations on procedural due process, they have, at the same time, observed that certain boundaries exist. One of the boundaries seems to be that the Fourteenth Amendment procedural protection of property is a safeguard of the interests a person has *already acquired* in specific benefits. *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Thus, the Supreme Court has held that a person *already receiving* welfare benefits under standards defining eligibility for them has an interest in continued receipt of those benefits that is safeguarded by procedural due process. *Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287. Also, *Flemming v. Nestor*, 363 U.S. 603, 611, 80 S.Ct. 1367, 1373, 4 L.Ed.2d 1435, and *Vargas v. Trainor*, 508 F.2d 485 (7 Cir., 1974). In the area of public employment, the Court has held that a public college professor dismissed from an office *held under tenure provisions, Slochower v. Board of Education*, 350 U.S. 551, 76 S.Ct. 637, 100 L.Ed. 692, and college professors and staff members dismissed *during the terms of their contracts, Wieman v. Updegraff*, 344 U.S. 183, 73 S.Ct. 215, 97 L.Ed. 216, have interests in continued employment that are safeguarded by due process. Only last year, the Court held that this principle "proscribing summary dismissal from public employment without hearing or inquiry required by due process" also applied to a teacher recently hired without tenure or a

formal contract, *but nonetheless with a clearly implied promise of continued employment. Connell v. Higginbotham*, 403 U.S. 207, 208, 91 S.Ct. 1772, 1773, 29 L.Ed.2d 418.

Because applicants for public housing have legitimate expectations that their applications will not be unfairly denied, a strong case can be made for arguing that they have a "property interest" cognizable under the Fourteenth Amendment even though their full rights as tenants in public housing are in futuro. This is so because mere entitlement to public assisted housing for the needy is a significant benefit granted by the government which the qualified are entitled to enjoy.

■ It is unnecessary, however, in this case, to cut the Gordian knot.[2] This is so because Congress has given protection to applicants for public housing that parallel those that would be required if the due process clause applied to the issue at hand. If due process applied, the court would conclude that the property interest of the plaintiffs herein is of less magnitude than the interest in not being unfairly removed from public assistance. See, *Goldberg v. Kelly, supra*. The urgency of a *Goldberg* situation, i. e., no check to buy groceries for the evening meal, is more pressing than here, where an applicant, presumably living somewhere, wishes to move into a different dwelling when a vacancy exists. The "form" of due process rights, of course, depends on the significance of the interest being protected. *Cf. Board of Regents v. Roth, supra*.

The court finds that a sound interpretation of minimal requirements under 42 U.S.C. 1437d(c)(3) would comport with the minimal procedures necessary to satisfy the due process clause if the court concluded that the clause, in fact, applied. 42 U.S.C. 1437d(c)(3) provides:

The public housing agency shall promptly notify (i) any applicant determined to be ineligible for admission to

2. The election to not specifically base this decision on the applicability of the Fourteenth Amendment obviates the necessity of reaching

plaintiffs' claim that they are covered by Chapter 68, Wisconsin Statutes.

the project of the basis for such determination and provide the applicant upon request, within a reasonable time after the determination is made, with an opportunity for an informal hearing on such determination . . . . .

The only relevant regulation on this subject is 24 C.F.R. § 860.207, which directly tracks the statute and provides:

The PHA shall promptly notify any applicant determined to be ineligible for admission to a project of the basis for such determination, and shall provide the applicant upon request, within a reasonable time after the determination is made, with an opportunity for an informal hearing on such determination. . . . .

The defendants point out, in contrast to this very general regulation, that the HUD regulations are much more specific as to the notice and hearing requirements necessary in disputes with those who are already tenants. The procedures governing those hearings are set forth in § 866.56 and include a hearing before a hearing officer or panel, an opportunity to examine materials before the hearing, the right to be represented by counsel, the right to present evidence and to cross-examine and confront witnesses, and a decision based solely and exclusively on the facts presented at the hearing. The "hearing officer", defined in § 866.55(b)(1) is required to be

". . . an impartial, disinterested person selected jointly by the PHA and the complainant."

Finally, § 866.56(f) provides that the hearing shall be conducted "informally".

Defendants draw the conclusion that since the procedures outlined above are not set forth in the section of the regulations regarding applications, 24 C.F.R. § 860.207, that HUD does not impose upon local authorities the same requirements when reviewing an applicant for public housing. This conclusion is in keeping with the court's reasoning re due process. The problem with the contention, however, is that it goes too far.

■ The main issue for decision is the meaning of "notice" and "informal hearing"

in the statute and the regulation in dispute, and whether the defendants' procedures sufficiently satisfy the requirements of the law. The court concludes that the procedures used by the defendants fall a bit short of what is required.

The court is not convinced that "informal hearing" means, for instance, that HACM may use the person who originally was involved in making the final decision of HACM in rejecting an application as the Hearing Officer on the review. Nor does it allow the Hearing Officer to gather additional evidence after the hearing and use that evidence as a basis for decision without notice to the applicant.

Even though, as has been noted, the court deems it unnecessary to determine whether the due process clause applies, it is relevant to note that on an analogy with *Goldberg v. Kelly, supra,* several courts have apparently determined that notice and hearing procedures are constitutionally required. *See, Davis v. Toledo Metropolitan Housing Authority,* 311 F.Supp. 795 (N.D.Ohio, 1970); *Neddo v. HACM,* 335 F.Supp. 1397 (E.D. Wis., 1971). *See also, Holmes v. New York City Housing Authority,* 398 F.2d 262 (2 Cir., 1968).

These cases indicate that "hearing" is a flexible concept, depending upon the interests at stake and the capacities and circumstances of those who are to be heard. *Goldberg, supra.* It is reasonable to think that the statutory requirement for notice and hearing calls into play the accepted range of meanings of those terms as derived from the cases.

■ On that basis, as to the notice requirements under the statute, this court finds that the initial determination must set forth, with reasonable specificity, the reasons for denial of the application, and must state clearly that a hearing may be requested. The procedure to be followed in obtaining the hearing must be clearly explained and the notice must state that counsel is allowed, though not required, at the hearing.

Though "hearing" is also a flexible concept, certain elements are basic, the first of which is an impartial decision–maker.

The HACM practice of allowing the same person who makes a determination to reject an application, the Assistant Director of Resident Services, to act as one of the two persons who conduct the hearing violates the requirements of the law.

It is possible, however, that other persons employed at HACM would be appropriate decision-makers. In *Goldberg, supra*, 397 U.S. at 271, 90 S.Ct. at 1022, the Court stated:

"We agree with the District Court that prior involvement in some aspects of a case will not necessarily bar a welfare official from acting as a decision maker. He should not, however, have participated in making the determination under review."

The Hearing Officer must be insulated from any commitment to the decision already made by HACM.

At the hearing, the applicant must be allowed to present evidence, to question witnesses and examine the evidence against him. While the court does not find that it is incumbent of HACM to "call witnesses" in the strict sense at the hearing, if witnesses are produced, the applicant must be allowed to question them on matters related to the issue at hand. The ultimate decision, based on the material presented at the hearing, must be issued promptly following the hearing. It need not be a formal decision with findings of fact or conclusions of law; however, it should clearly and adequately inform the applicant of the reasons for the decision. Adherence to this requirement will facilitate review on *certiorari* if such review is desired.

The Court specifically finds that an informal hearing as contemplated here does not require a complete record, "testimony" taken under oath or adherence to the Rules of Evidence.

In determining that hearings in this context need not be full-blown trials, the Court is mindful of the need to avoid imposing heavy burdens on the departments charged primarily with delivering services. Congress, however, created a benefit under the Housing Act to which those meeting the eligibility requirements are entitled. To insure that the purpose of the statute is accomplished, those who claim eligibility must be provided with a hearing in which to set forth their claim. The informal hearing, as defined here, satisfies the requirements without placing an undue burden on the defendants.

In addition, the Court notes that this procedure comports with the decision of Judge Myron Gordon of this district ordering HACM to provide a hearing for a rejected applicant. See, *Neddo v. HACM, supra*. The decision was written before the statute involved in this case became effective. However, Judge Gordon noted that the procedure he outlined would be consonant with the Statute.

IT IS THEREFORE ORDERED that plaintiffs' motion for class certification is granted certifying a class

"consisting of all applicants for public housing operated by the Housing Authority of the City of Milwaukee whose applications have been, are being, or will be denied by the defendants."

IT IS ALSO ORDERED that plaintiffs' motion for partial summary judgment is granted and defendants are required to comply with the notice and hearing requirements as set forth above.

IT IS ALSO ORDERED that the defendants prepare written procedures implementing the requirements outlined in this decision, and that the procedures be submitted to the court, copies to counsel for the plaintiff, for approval no later than April 14, 1980.

IT IS FURTHER ORDERED that a pretrial conference on the damage claim of the Singletons be conducted by the court on April 17, 1980, at 8:45 A.M.