Beth TEDDER, Marsha Davis and Reta
Lindsey, et al., Plaintiffs,

v.

HOUSING AUTHORITY OF PADUCAH,
et al., Defendants.

Civ. A. No. 82–0162–P.

United States District Court,
W.D. Kentucky,
Paducah Division.

March 18, 1983.

Richard Gladstein, Nicholas Harding, Western Ky. Legal Services, Paducah, Ky., Geneva Parris, Western Ky. Legal Services, Madisonville, Ky., for plaintiffs.

William B. Byrd, Paducah, Ky., for defendants.

## MEMORANDUM OPINION

JOHNSTONE, District Judge.

This matter is before the Court on the motion of defendants, the Housing Authority of Paducah (HAP) and Carl Marquess, HAP Executive Director, to dismiss this action for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b) and that the claims stated in the amended complaint are moot. Plaintiffs' motion for class certification pursuant to Rule 23 is also before the Court. The Court will address both motions.

The HAP is a public corporation created pursuant to K.R.S. 80.010, *et seq.* HAP owns the Paducah Housing Project, which it operates pursuant to a long-term contract with Housing and Urban Development (HUD) for the purpose of providing low-rent housing to families unable to afford adequate and decent housing from the private market. HAP has approximately 1100 apartments subject to occupancy. By the terms of HAP's annual contributions contract with HUD, it receives federal funds to subsidize its provision of low-rent housing and is bound to comply with provisions of the United States Housing Act of 1937 and 1949, 42 U.S.C. § 1401, *et seq.*, as amended 1974, and the regulations promulgated by HUD.

Defendant Marquess is responsible for the administration of HAP in compliance with the laws and regulations governing

the admission of tenants and the physical maintenance of that project.

Plaintiffs, five applicants for public housing, seek declaratory, injunctive relief, and damages for safe, sanitary, and decent public housing, as applicants who have been or will be denied public housing because of defendants' admissions, rejection, and vacancy policies, procedures, and practices in violation of the Due Process and Equal Protection guarantees of the Fourteenth Amendment as enforceable under 42 U.S.C. § 1983; the United States Housing Act, as amended 1974, 42 U.S.C. § 1401, *et seq.;* HUD regulations including 24 C.F.R. § 860.201 *et seq.,* and the terms of the defendants' local policies. Plaintiffs also seek to maintain a class action pursuant to Rule 23 on behalf of all lower-income applicants for safe, sanitary, and decent public housing whose applications have been, are being, or will be denied by the defendants.

The plaintiffs assert jurisdiction under 28 U.S.C. § 1331(a), governing actions arising under the Constitution and laws of the United States; 28 U.S.C. § 1337, governing actions arising under Acts of Congress regulating commerce; 28 U.S.C. §§ 1343(3) and 1343(4), governing actions brought to redress the deprivation of federal rights; and 28 U.S.C. §§ 2201 and 2202, providing declaratory relief for such actions. Plaintiffs further claim that this action is authorized by 42 U.S.C. § 1983, which provides redress for the deprivation under color of state law of rights, privileges, and immunities secured to all citizens and persons within the jurisdiction of the United States.

To fully address the legal issues underlying the factual allegations in the complaint, a statement of the case, abbreviated from the plaintiffs' supporting memoranda follows. For purposes of the motion to dismiss, the allegations of plaintiffs' complaint are taken to be true. *Hillard v. Williams,* 465 F.2d 1212, 1214 (6th Cir. 1972), *cert. denied,* 409 U.S. 1029, 93 S.Ct. 461, 34 L.Ed.2d 322 (1972).

## I. FACTUAL BACKGROUND

Plaintiffs Beth Tedder, Marsha Davis, Reta Lindsay, Alunda Askew, and Julia

Smithson, are all lower-income persons and head of their household with one or more dependent children. Their claim is that, for several years, HAP has engaged in a pattern and practice of maintaining vacancies at its housing projects to await higher-income applicants where lower-income applicants have been and are available, in violation of 42 U.S.C. § 1437d(c)(4)(A) and 24 C.F.R. § 860.205(c)(8). Plaintiffs also allege that during this period they were categorically excluded from public housing by defendants because their sole source of income is entitlements from Aid for Families with Dependent Children (AFDC) and Food Stamps.

According to their individual affidavits, made a part of the complaint, each plaintiff applied for public housing between 1979 and 1981. All were placed on the HAP applicant waiting list, except Askew, and each alleges that she was told that, even though vacancies existed, her income was too low for admittance. In each case, the plaintiffs' sole source of income is entitlements from AFDC and Food Stamps.

The plaintiffs claim that on August 30, 1982, there were approximately fifty vacant apartments administered by HAP. It is plaintiffs' claim that from January 1, 1981, to September 30, 1982, HAP apartments were allowed to remain vacant for a total of roughly 15,870 days, an average of 42 days per unit. At the same time it is alleged that there were approximately 550 families on the HAP waiting list.

Plaintiff Askew alleges that, because she was seventeen at the time of her application, she was advised that she was ineligible because of her age. However, the applicant was not told that she could ask for a hearing if she disagreed with the decision. Although Askew was seventeen at the time, she was responsible for supplying the needs of her family. The plaintiffs claim defendants are neglecting the requirements of constitutional due process, 42 U.S.C. § 1437d(c)(3), and 24 C.F.R. § 860.207, which require HAP to promptly notify any applicant determined to be ineli-

gible for admission of their opportunity for an informal hearing, and any applicant determined to be eligible for admission of the approximate date of occupancy.

With the exception of Reta Lindsay and Marsha Davis, who accepted housing from HAP after this suit was filed, these families have been forced to seek inadequate housing with family, friends, or to apply substantial parts of their income for housing, depriving them and their children of other basic necessities.

By its memoranda in support of its motion to dismiss, HAP admits vacancies existed in its projects prior to the initiation of this action, yet contends this practice complies with the law as set forth in the governing statute, 42 U.S.C. § 1437d(c)(4)(A) which requires:

> [T]he establishment of tenant selection criteria designed to assure that, within a reasonable period of time, the project will include families with a broad range of incomes and will avoid concentrations of low income and deprived families with serious problems, but this shall not permit maintenance of vacancies to await higher income tenants where lower income tenants are available.

HAP, in its attempt to balance these goals, admits that until given guidance by the regional HUD deputy director for management, housing division, by letter dated August 19, 1982, it emphasized the former legislative goal of income diversity over the latter mandate of filling vacancies where lower income tenant applicants were available. However, since receipt of the HUD letter, HAP has undertaken an accelerated program to fill all existing vacancies from the applicant waiting list.

Defendants' motion to dismiss, as renewed February 3, 1983, does not challenge plaintiffs' jurisdictional claim, but charges that no private cause of action exists under the United States Housing Act, 42 U.S.C. § 1401, et seq., and accordingly, contends that the amended complaint fails to state a claim upon which relief may be granted pursuant to Rule 12(b) under either the Housing Act or the Civil Rights Act, 42 U.S.C. § 1983. Defendants rely upon the opinion of the United States Court of Appeals for the Fourth Circuit in *Perry v. Housing Authority of City of Charleston,* 664 F.2d 1210 (4th Cir.1981). In addition defendants state a second grounds for dismissal, urging that plaintiffs' claim is now moot because vacancies are no longer being maintained.

Plaintiffs respond in opposition to defendants' motion to dismiss contending that the defendants have not met their heavy burden to prevail on a motion to dismiss in a civil rights case under 42 U.S.C. § 1983. In addition, it is plaintiffs' position that their federal statutory claims under the Housing Act are cognizable as predicated on § 1983; that they have an implied cause of action under the Housing Act; and may bring this action as the third-party beneficiaries of the annual contributions contract between HUD and the defendants. Plaintiffs also reject the argument of defendants that plaintiffs' claim is moot because HAP has not demonstrated beyond a reasonable expectation that it will no longer maintain vacancies to await higher income tenants when lower income tenants are available.

## II. THE CONSTITUTIONAL CLAIM OF THE HAP TENANT APPLICANTS [1]

■ Upon a motion to dismiss, the standard for reviewing the sufficiency of the allegations provides that "... a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

---

1. While subject matter jurisdiction in this Court is not challenged by defendants, the Court will initially examine the substance of plaintiffs' "constitutional claim(s)," as those claims may confer jurisdiction under 28 U.S.C. § 1343. In pursuing this approach, the Court is mindful of the Supreme Court's admonition that where pendent jurisdiction obtains, a court should dispose of the case on the nonconstitutional grounds if possible. *E.g., Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974); *Dandridge v. Williams,* 397 U.S. 471, 475–76, 90 S.Ct. 1153, 1156–57, 25 L.Ed.2d 491 (1970).

support of [her] claim which would entitle [her] to relief." *Hilliard v. Williams,* 465 F.2d 1212, 1214 (6th Cir.1972), *citing, Conley v. Gibson,* 355 U.S. 41, 45–4645–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957). This same principle was reiterated by the United States Court of Appeals for the Sixth Circuit with the further admonishment that "... dismissals of complaints under the civil rights statutes are scrutinized with special care." *Westlake v. Lucas,* 537 F.2d 857, 858–859 (6th Cir.1976). Even where it appears that it may be unlikely for the plaintiff to succeed on the merits, this Court will not dismiss a complaint where it appears the claimant should be entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The Civil Rights Act, Section 1983 of Title 42 of the United States Code, provides that any citizen may seek redress in the courts against any person or persons who, under color of any State law or custom, subjects such citizen to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States. Two essential elements must be pled and proven by a plaintiff to recover under 1983. First, there must be a deprivation of plaintiff's "... rights, privileges, or immunities secured by the Constitution and laws ...." of the United States. *Baker v. McCollan,* 443 U.S. 137, 140, 99 S.Ct. 2689, 2692, 61 L.Ed.2d 433 (1970); *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). Second, the plaintiff must allege that the defendants deprived him of this Constitutional right "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory." *Monroe v. Pape,* 365 U.S. 167, 171–188, 81 S.Ct. 473, 476–484, 5 L.Ed.2d 492 (1961); *Adickes v. S.H. Kress and Co.,* 398 U.S. 144, 150, 90 S.Ct. 1598, 1604, 26 L.Ed.2d 142 (1970).

■ Defendants do not contest that HAP and its executive director, Marquess, acted "under color of state law." The HAP is a federally subsidized, state creat-ed, locally administered corporate body pursuant to K.R.S. 80.010, *et seq.* Its actions are taken under color of state law. The United States Court of Appeals recognize that public housing authorities are elements of the state for Fourteenth Amendment purposes. *See e.g., Billington v. Underwood,* 613 F.2d 91, 92 n. 1 (5th Cir.1980); *Chavez v. City of Santa Fe Housing Authority,* 606 F.2d 282, 283 n. 3 (10th Cir. 1979); *Joy v. Daniels,* 479 F.2d 1236, 1238–1239 (4th Cir.1973); *Escalera v. New York City Housing Authority,* 425 F.2d 853 (2d Cir.1970), *cert. denied,* 400 U.S. 853, 91 S.Ct. 54, 27 L.Ed.2d 91 (1970).

As to the first requirement, plaintiffs' amended complaint states that their claim arises from defendants' alleged failure to provide fundamentally fair admissions, rejection, and vacancy policies, procedures, and practices as required by the Due Process and Equal Protection guarantees of the Fourteenth Amendment. These shall be considered in turn.

## A. THE HAP TENANT–APPLICANTS' DUE PROCESS CLAIM

The allegations of the complaint detail plaintiffs' contention that the defendants have denied them a meaningful opportunity to be heard upon rejection of their application for public housing. The United States Supreme Court in *Goldberg v. Kelly,* 397 U.S. 254, 267–268, 90 S.Ct. 1011, 1020–1021, 25 L.Ed.2d 287 (1970) (and cases cited there), mandated that the due process clause of the Fourteenth Amendment requires governmental agencies to provide an individual with a hearing before deprivation of a property interest in a statutory entitlement. The issue raised here is whether plaintiffs have a "property interest" in HAP public housing. The Supreme Court recognizes a myriad of interests as protected by due process and has held that

> [a] person's interest in a benefit is a 'property' interest for due process purposes if there are such rules or mutually explicit understandings that support his claim of entitlement to the benefit and that he may invoke at a hearing.

*Perry v. Sinderman,* 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1922), *citing, Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). With this guidance, this Court considers the relationship between HAP and the applicants on the HAP waiting list.

As a public housing agency, HAP is chartered to provide safe, sanitary, and decent public housing for low income families. 42 U.S.C. §§ 1401, 1402(2), 1410(a), 1441a. To ensure the fair treatment of all applicants for public housing, Congress mandated that an applicant deemed to be ineligible shall have the opportunity for an informal hearing to contest their denial of eligibility. 42 U.S.C. § 1437d(c)(3)(i) and 24 C.F.R. § 860.207. As to eligible applicants, the law provides that they shall be notified of the approximate date of admission as such date can be reasonably determined. 42 U.S.C. § 1437d(c)(3)(ii) and 24 C.F.R. § 860.207.

Plaintiffs all contend they followed the prescribed procedures for applying for HAP public housing. As an example, the affidavit of Alunda Askew recites that she applied in writing for HAP public housing on behalf of herself and son in the summer of 1981. It is plaintiff's contention that Josephine Harvey, HAP Tenant Selection Supervisor, rejected her application because Harvey determined Askew, then seventeen years old, was too young, based on Harvey's interpretation of the HAP Regulations Establishing Admissions Policies. Askew's rejection necessitated an interpretation of the HAP policies and HUD regulations promulgated under the statutory framework of the Housing Act. Since Askew's parents are deceased and she provides all support for her family, it is arguable that she qualifies under the agency's "head" of household definition and would be excepted from the eighteen year old minimum age requirement. In this case, the opportunity for an impartial consideration of Harvey's decision should have been provided and might have afforded acceptance of Askew's application for family housing rather than rejections of her application. The housing authority must follow

its own procedures. *Morton v. Ruiz,* 415 U.S. 199, 235, 94 S.Ct. 1055, 1074, 39 L.Ed.2d 270 (1974).

█ Applicants for public housing have a legitimate expectation that their application will be fully considered and not unfairly denied. The Court is persuaded that applicants for public housing have a "property interest" cognizable under the Fourteenth Amendment. *Singleton v. Drew,* 485 F.Supp. 1020, 1022–1023 (E.D.Wis. 1980). Entitlement to public assisted housing for the needy is a significant benefit granted by Congress, which the qualified are entitled to enjoy.

Although thoroughly briefed, the Court expresses no view on the issue of what process is due under the statute. *See, e.g., Billington v. Underwood,* 613 F.2d 91, 95 (5th Cir.1980); *Singleton v. Drew,* 485 F.Supp. 1020, 1023–1025 (E.D.Wis.1980); *Lancaster v. Scranton Housing Authority,* 479 F.Supp. 134, 136–137 (M.D.Pa.1979), *aff'd* 620 F.2d 288 (3d Cir.1980). Such a determination must be deferred since it would require a factual investigation, a matter inappropriate on a motion to dismiss. While the Court finds a constitutional claim based on a deprivation of due process, plaintiffs also allege that defendants' tenant selection policies are not reasonably related to some permissible goal or purpose in compliance with constitutional equal protection.

### B. THE HAP TENANT–APPLICANTS' EQUAL PROTECTION CLAIM

█ The Fourteenth Amendment clause, providing for equal protection of the laws, bars discrimination by public authorities in selecting tenants for living quarters in public housing projects owned or maintained by any state, or any subdivision or agency of a state. *Detroit Housing Commission v. Lewis,* 226 F.2d 180 (6th Cir.1955) (race discrimination). However, the Court will uphold legislative actions which burden poor persons as a class under the equal protection guarantee if the actions have any "rational basis" to a legit-

imate end of government and is free from invidious discrimination. *Dandridge v. Williams,* 397 U.S. 471, 485–487, 90 S.Ct. 1153, 1161–1163, 25 L.Ed.2d 491 (1970) (upheld state public welfare regulation limiting recipient's grant). Thus, in a challenge to public housing admissions practices, defendants must show that their selection policies are reasonably related to some permissible governmental goal or purpose.

■ Congress has authorized HAP, through HUD, to "... assure that, within a reasonable period of time, the project will include families with a broad range of incomes and will avoid concentrations of low-income and deprived families with serious social problems," however this legislative goal is tempered by the mandate that "... this shall not permit maintenance of vacancies to await higher income tenants when lower income tenants are available." 42 U.S.C. § 1437d(c)(4). Congress did not express an intent to allow local housing authorities to impose occupancy requirements which result in denying admission to any family on the basis that its income is too low. S.R. No. 93–693 at 3817, U.S.Code Cong. & Admin.News 1974, 4273 at 4311.

Plaintiffs contend that HAP maintained vacancies at its housing projects from 1981 through 1982 to await higher-income applicants where lower-income applicants, such as themselves, were available, but were excluded from public housing by defendants because their sole source of income is derived from AFDC and Food Stamps. Plaintiffs base their argument on claims that, until this action was initiated, all persons with AFDC receipts as their sole source of income were categorically denied admission, unless two AFDC recipients doubled up in a single apartment. It is alleged that HAP arbitrarily discriminated against AFDC recipients barring the admission of all applicants receiving public assistance unless they received a "contribution" or other income supplementing the government largess. During this period, plaintiffs offer that HAP apartments remained vacant for a total of 15,870 days, an average of 42 days per unit, while 550 families remained on the HAP waiting list.

■ While Congress has indicated its favor for some income admissions criteria under 42 U.S.C. § 1437d(c)(4), *see Fletcher v. Housing Authority of Louisville,* 525 F.2d 532, 535–538 (6th Cir.1975), (Edwards, J., dissenting), the Court finds no rational basis at this juncture for defendants' alleged arbitrary practice of excluding all applicants whose sole source of income is AFDC and Food Stamp benefits.

III. THE FEDERAL STATUTORY CLAIMS OF THE HAP TENANT-APPLICANTS

■ In addition to their constitutional claims brought under 42 U.S.C. § 1983 and 28 U.S.C. § 1343(3) and (4), plaintiffs request this Court to take pendent jurisdiction over their nonconstitutional claims based on 42 U.S.C. §§ 1437d(c)(3) and 1437d(c)(4)(A). Defendants do not dispute subject matter jurisdiction in this Court. Even so, it is incumbent upon the Court to determine whether subject matter jurisdiction exists. Pursuant to the Supreme Court's ruling in *Hagans v. Lavine,* 415 U.S. 528, 537, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974), as that opinion is followed by the United States Court of Appeals for the Sixth Circuit in *Crawley v. Board of Education of Marion,* 658 F.2d 450, 451 (6th Cir.1981), it is recognized that where the Court has jurisdiction over a substantial constitutional claim it may then take pendent jurisdiction over the nonconstitutional claims without determining whether the remaining federal claims in their own right are encompassed within 1343. *Rosado v. Wyman,* 397 U.S. 397, 402–405, 90 S.Ct. 1207, 1212–1214, 25 L.Ed.2d 442 (1970). A "substantial" constitutional claim is one that is not "so attenuated and unsubstantial as to be absolutely devoid of merit." *Crawley v. Board of Education of Marion,* 658 F.2d at 451, *citing Hagans v. Lavine,* 415 U.S. at 536–37, 94 S.Ct. at 1378–79. Since plaintiffs' constitutional claims are "substantial" in

the jurisdictional sense, the Court has subject matter jurisdiction.

As grounds for dismissal on the merits, the defendants assert that the plaintiffs, as applicants for public housing, cannot state a cause of action under the United States Housing Act, as amended, 42 U.S.C. § 1401, *et seq.*, nor the HUD regulations, including 24 C.F.R. § 860.201, *et seq.*, because Congress did not create an express or implied private right of action in favor of public housing applicants against the local housing authority. *Perry v. Housing Authority of City of Charleston*, 664 F.2d 1210 (4th Cir.1981).

The plaintiffs urge that the United States Supreme Court recognizes that a 1983 action may be predicated upon, not only constitutional law, but the violation of a federal statutory right, such as the Housing Act, as well. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (1983 may encompass claims based solely on the Social Security Act). In the alternate, they counter that a private cause of action under the United States Housing Act, 42 U.S.C. § 1401, *et seq.*, may be implied under the test, as applied by the United States Supreme Court, in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975). *See e.g., Silva v. East Providence Housing Authority*, 423 F.Supp. 453, 464 (D.R.I.1976), *remanded*, 565 F.2d 1217 (1st Cir.1977) (the court implied a private right of action under the *Cort* test to enforce the provisions of the Housing Act). As a third argument, the plaintiffs argue that applicants for public housing have a right of action as third-party beneficiaries to the annual contributions contract between HAP and HUD. *Holbrook v. Pitt*, 643 F.2d 1261, 1269–73 (7th Cir.1981) (tenants are third-party beneficiaries of 42 U.S.C. § 1437f, housing assistance payment contract); *Free v. Landrieu*, 666 F.2d 698, 702 (1st Cir.1981) (tenant is a third-party beneficiary of 42 U.S.C. § 1437f, housing assistance payment contract). *But see Falzarano v. United States*, 607 F.2d 506, 511 (1st Cir.1979) (tenants not third-party beneficiaries based on 12 U.S.C. § 1715*l*); *Boston Public Council, Inc. v. Lynn*, 388 F.Supp. 493, 496 (D.Mass.1974) (tenants not third-party beneficiaries based on 42 U.S.C. § 1401, *et seq.* ).

■ The Court is persuaded that plaintiffs may predicate their 1983 action on either the violation of a federal statutory right, such as the rights afforded by 42 U.S.C. §§ 1437d(c)(3) and 1437d(c)(4)(A), or their constitutional claims. Accordingly, the Court does not reach the questions of whether the Housing Act affords a private cause of action or whether plaintiffs are third-party beneficiaries to the contract between HUD and HAP. On the basis of *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the plaintiffs have stated a cause of action for damages and equitable relief under 42 U.S.C. § 1983. *See Martin-Marietta Corp. v. Bendix Corp.*, 690 F.2d 558, 562 (6th Cir.1982) (applying the rule in *Maine v. Thiboutot* to federal statutory rights under the Williams Act as predicated on 1983 violation of Supremacy and Commerce Clauses).

In *Perry v. Housing Authority of City of Charleston*, 664 F.2d 1210 (4th Cir.1981), the United States Court of Appeals for the Fourth Circuit rejected the claims of public housing tenants under the Housing Act, the Civil Rights Act, and arguments relying on the Supreme Court's opinion, *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), because the Court found the contested provisions of the Housing Act created no "rights, privileges, or immunities" within the meaning of § 1983. *Perry v. Housing Authority of City of Charleston*, 664 F.2d at 1217, *citing, Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 21 n. 21, 101 S.Ct. 1531, 1545 n. 21, 67 L.Ed.2d 694 (1981) (held no private cause of action under the Developmentally Disabled Assistance and Bill of Rights Act) and *Middlesex County Sewerage Authority v. National Sea Clammers Ass'n*, 453 U.S. 1, 17–20, 101 S.Ct. 2615, 2625–2626, 69 L.Ed.2d 435 (1981) (held no private cause of action under the Marine Protection, Research, and Sanctuaries Act

**248**

or the Federal Water Pollution Control Act). In *Perry*, there was no violation of the tenants' rights to decent housing by the exercise of defendants' managerial discretion in refusing to remedy deficiencies at the local public housing project. *But see Joy v. Daniels*, 479 F.2d 1236 (4th Cir. 1970); *Swann v. Gastonia Housing Authority*, 675 F.2d 1342 (4th Cir.1982) (both Fourth Circuit cases held tenants have a statutory right to avoid eviction absent good cause shown).

On the other hand, in this action, the plaintiffs allege facts demonstrating defendants failure to afford them the statutorily mandated procedures intended by Congress to guarantee them tangible due process and equal protection rights under the United States Housing Act within the meaning of § 1983. Even *Perry v. Housing Authority of City of Charleston*, 486 F.Supp. 498, 503 (D.S.C.1980), *aff'd*, 664 F.2d 1210 (4th Cir.1981), recognizes "... that the rights of tenants and applicants for public housing are protected by due process guarantees, [cites omitted]." Section 1983 provides a cause of action for the deprivation of any rights, privileges, or immunities "secured by the Constitution and laws." The Supreme Court reasons that since Congress attached no modifiers to the phrase "and laws" in drafting § 1983, the plain language of the statute undoubtedly embraces claims against persons alleged to have violated a federal statute. *Maine v. Thiboutot*, 448 U.S. at 4–8, 100 S.Ct. at 2504–2506, 65 L.Ed.2d 555. Because the phrase "and laws" is not read as limited to civil rights or equal protection laws, the plaintiffs have stated a cause of action under 42 U.S.C. § 1983.

### IV. MOOTNESS

Defendants argue that plaintiffs' claim that HAP has maintained vacancies to await higher income tenants where lower income tenants were available is now moot because, at HUD's direction, HAP embarked on an accelerated program of renting all its vacant units to applicants on its waiting list and no apartments are now vacant and being denied to lower income families by defendants. In support of its argument, defendants offer that, as of February 1, 1983, only ten of the 1,100 units of the eight HAP projects are vacant. Of these ten units, seven units require repairs prior to rental, leaving only two units available for immediate rental. Defendants claim that 102 units have been rented since September 1, 1982, and 33 of them were rented to persons in the lowest family income range of $0 to $2,000, and 40 units were rented to persons in the range of $2,000 to $3,000. The Court has no doubt that these actions were taken and defendants assertions are offered in good faith, but they are not sufficient to hold this action moot.

■ It is recognized that when the specific relief sought comes about by defendants' voluntary cessation of the challenged conduct, even when accompanied by assurances of future good conduct, the controversy is not moot unless the defendant meets a heavy burden demonstrating that there is no reasonable expectation that the wrong will be repeated. *See, e.g., City of Mesquite v. Aladdin's Castle, Inc.*, 455 U.S. 283, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982) (language of an ordinance held unconstitutionally vague was no longer a part of the ordinance but did not preclude reenacting precisely the same provision; held not moot); *United States v. Concentrated Phosphate Export Ass'n*, 393 U.S. 199, 89 S.Ct. 361, 21 L.Ed.2d 344 (1968) (antitrust defendant association had dissolved and could therefore not repeat violation as that entity; association members also claimed they would not repeat the challenged activity because a new regulation made it unprofitable; held not moot); *United States v. W.T. Grant Co.*, 345 U.S. 629, 73 S.Ct. 894, 97 L.Ed. 1303 (1953) (defendant sued by government for holding interlocking directorships in competing corporations resigned relevant directorships and announced intention not to resume them; held not moot).

The same principle applies to housing cases. *Gautreaux v. Romney*, 448 F.2d

731, 735–737 (7th Cir.1971, *remanded* 363 F.Supp. 690 (N.D.Ill.1973), *rev'd on other grounds and remanded,* 503 F.2d 930 (7th Cir.1974), *aff'd, Hills v. Gautreaux,* 425 U.S. 284, 96 S.Ct. 1538, 47 L.Ed.2d 792 (1976) (HUD's voluntary promise to cease allegedly illegal admissions; held not moot). Despite the fact that defendants had already voluntarily given plaintiff that for which they sued, the courts still found the action was not moot because there was a possibility defendant might resume the challenged activity.

■ Plaintiffs' pleadings set out in detail its allegations that defendants did maintain vacancies to await higher income tenants when lower income tenants were available from January 1, 1981 to September 30, 1982. Defendants respond with no offers of assurance that the change in compliance with existing law is permanent. More importantly, significant procedural issues remain as to defendants' eligibility, admissions, and rejection policies, procedures, and practices.

While the issues raised by the plaintiffs are not moot, the Court again looks to the parties to pursue reconciliation to resolve existing problems. The record in this case and the statements made on behalf of the plaintiffs and defendants indicate a genuine desire to amicably resolve any deficiencies in the policies, procedures, and practices of the HAP.

## V. DEFENDANT MARQUESS INDIVIDUALLY

Defendants have moved to dismiss Defendant Carl Marquess, HAP Executive Director, in his individual capacity.

■ Liability under the Civil Rights Act, 42 U.S.C. § 1983, extends to all persons individually who, under color of state law, have personally directed or participated in the deprivation of civil rights. Plaintiffs have alleged that Defendant Marquess is responsible for the administration of HAP in compliance with the laws governing the admission of public housing tenants. They also allege that these proce-

dures are in violation of plaintiffs' constitutionally protected rights.

A person cannot be held liable pursuant to § 1983 under the doctrine of *respondeat superior* as a supervisor for the control of those who actually commit the challenged acts. *Monell v. New York City Department of Social Services,* 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). However, where it is alleged that a person has sufficient personal involvement in establishing policy or custom resulting in the deprivation of constitutional guarantees because of those official practices, then the allegations may properly state a claim against the individual. *Rizzo v. Goode,* 423 U.S. 362, 375–377, 96 S.Ct. 598, 606–607, 46 L.Ed.2d 561 (1976). Plaintiffs' amended complaint states a claim against Defendant Carl Marquess.

## VI. CLASS CERTIFICATION

While the Court recognizes that it should decide a pending motion for class certification as soon as practicable after the commencement of the action, the Court concludes that it must defer ruling on the pending motion of the plaintiffs. The parties have thoroughly briefed the issue, however, if either party desires to submit additional factual information for consideration of this matter for class certification under the criteria of Federal Rule of Civil Procedure 23, the plaintiffs will be permitted thirty days from this date to supplement the record and defendants will be granted a thirty day additional period.

An appropriate order is this day entered.