715 F.2d 853
 4 Employee Benefits Cas. 2082
 GROSSMULLER, Raymond
v.
INTERNATIONAL UNION, UNITED AUTOMOBILE AEROSPACE AND
AGRICULTURAL IMPLEMENT WORKERS OF AMERICA, UAW, LOCAL 813 of
the International Union, United Automobile, Aerospace and
Agricultural Implement Workers of America UAW, and the Budd
Co., the Budd Company Consolidated.
Appeal of the BUDD COMPANY CONSOLIDATED RETIREMENT BENEFIT
PLAN FOR EMPLOYEES.
 No. 82-1635.
 United States Court of Appeals,
Third Circuit.
 Argued July 12, 1983.
Decided Sept. 2, 1983.
 
 Carter R. Buller (argued), Robert M. Goldich, Montgomery, McCracken, Walker & Rhoads, Philadelphia, Pa., for appellant.
 Stephen G. Pollock (argued), Stack & Gallagher, P.C., Philadelphia, Pa., for appellee Grossmuller.
 Before SEITZ, Chief Judge, and SLOVITER and VAN DUSEN, Circuit Judges.
 OPINION OF THE COURT
 VAN DUSEN, Senior Circuit Judge.
 
 
 1
 This appeal from a district court order restoring plaintiff's entitlement to disability benefits under his former employer's pension plan requires consideration of three issues. First, did the pension plan's claims procedure comply with the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1133 (ERISA)? Second, was it an abuse of discretion to award to the plaintiff benefits retroactive to the date of his termination from the plan's coverage? Third, was it an abuse of discretion to enjoin the pension plan from undertaking any prospective termination of plaintiff's benefits without adoption by the plan, and approval by the district court, of a claims procedure consonant with ERISA? We hold that the district court correctly concluded that the pension plan's claims procedure failed to satisfy ERISA requirements and properly awarded the plaintiff retroactive benefits. We also hold that the wording of the injunction prohibiting prospective termination of the plaintiff's benefits was ambiguous. Accordingly, the order of the district court will be affirmed in part and reversed in part and the matter will be remanded to that court for further proceedings consistent with this opinion.
 
 I.
 
 2
 In July of 1973 plaintiff (hereafter "Grossmuller") began receiving disability benefits under the terms of a consolidated retirement benefit plan which had been established by a collective bargaining agreement between his employer, the Budd Company, and the United Automobile, Aerospace and Agricultural Implement Workers of America. A local board, composed of three Budd Company and three union representatives, administered the plan locally by determining the rights of plan participants, by receiving and acting upon benefit applications, by authorizing payments and by notifying participants of any termination or suspension of benefits and the reasons therefor. The national board, consisting of four members appointed by the Budd Company and four by the union, provided forms to claimants to be used in filing and processing applications, heard and determined appeals from the local boards and interpreted the pension plan for participants.
 
 
 3
 To remain eligible for disability benefits, Grossmuller, a pensioned participant in the plan, could not engage in regular employment or in an occupation for remuneration or profit. In 1977 the Budd Company's personnel manager, a member of the local board, received information leading him to believe that Grossmuller was so employed and therefore no longer eligible for benefits. To investigate, the personnel manager contacted a private detective, who appeared personally before the board with movies allegedly showing Grossmuller tending bar at a country club. The detective also presented a report, based upon an interview with the owner of the club, that Grossmuller was working off a $3800. loan which he had received from the owner. On August 10, 1977, the board, on the basis of this evidence, voted unanimously to terminate Grossmuller's benefits. Five days later the board notified Grossmuller of the decision and cited gainful employment as the basis for terminating his benefits. The board did not apprise Grossmuller of what evidence it considered.
 
 
 4
 Grossmuller then went to the local union president, Henry Gryn, who was also a member of the local board. At trial, Gryn's and Grossmuller's recollections of their conversation differed. Grossmuller testified on direct examination that Gryn said that the local board had a meeting and found that Grossmuller had been gainfully employed. According to Grossmuller, Gryn gave him a form for filing an appeal but provided him with no other information about the decision.
 
 
 5
 Gryn, however, recalled that during the colloquy he explained to Grossmuller the evidence presented to the local board, as follows:
 
 
 6
 "I told him that the evidence was very strong. I told him about the film and the different things that were in the film.
 
 
 7
 "We also told him about the investigator's comments about the loan that he had. I also told him that he had an obligation to try to give us some evidence that would contradict what was in this film and what was said by the investigator.
 
 
 8
 "I also explained to him the appeal procedure but I did not give him a form....
 
 
 9
 "Q But, when you described the appeal procedures to him, that during that conversation that you had with him, you didn't tell him that he had a right to appear in front of the Board, did you?
 
 
 10
 "A No, I did not.
 
 
 11
 "Q Did you tell him he could introduce documentary evidence?
 
 
 12
 "A Yes."
 
 
 13
 (N.T. 231a-32a). In a letter dated August 30, 1977, Grossmuller protested the termination of his benefits and requested an appearance before the board. On September 14, 1977, the board sent Grossmuller instructions and a form with which to appeal the decision. Eight days later Grossmuller completed and returned the form. On October 12, 1977, the local board affirmed the denial of benefits without allowing Grossmuller to appear before it and informed him of his right to appeal the decision to the national board. Grossmuller did so, and on December 20, 1977, the national board reviewed and denied Grossmuller's appeal.
 
 
 14
 In December of 1979 Grossmuller filed this action in the Court of Common Pleas of Philadelphia County against the Budd Company and the union, which removed the matter to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1446(d). In March of 1980 the district court ordered Grossmuller to join the plan as an indispensable party. The company, union and plan all moved for summary judgment, which the district court granted on March 17, 1981, in favor of the company and union. The district court later granted part of the plan's motion but denied the remainder. See Grossmuller v. International Union, U.A.W., 511 F.Supp. 709 (E.D.Pa.1981).[1]
 
 
 15
 In September of 1981 the district court, sitting without a jury, heard evidence on the issue of whether the plan's claims procedure satisfied ERISA requirements. The court rendered a decision favorable to Grossmuller on September 10, 1982. From this order the plan filed the instant appeal. See Grossmuller v. Budd Company Consolidated Retirement Benefit Plan for Employees, 547 F.Supp. 111 (E.D.Pa.1982).[2]
 
 II.
 
 16
 The Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1133, provides that
 
 
 17
 "In accordance with regulations of the Secretary, every employee benefit plan shall--
 
 
 18
 (1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and
 
 
 19
 (2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim."
 
 
 20
 Although the statutory requirements under subsection (1) are clear and precise, the parameters of "a reasonable opportunity ... for a full and fair review," provided in subsection (2), need further elaboration. The legislative history of ERISA affords scant insight into the exact procedure contemplated by Congress, but the intent of encouraging internal resolution of claims is apparent. The House conference report accompanying the act directed courts to regard ERISA civil actions brought by participants and beneficiaries "as arising under the laws of the United States in similar fashion to those brought under § 301 of the Labor Management Relations Act of 1947." H.R.Rep. No. 93-807, 93d Cong., 2d Sess., reprinted in [1974] U.S.Code Cong. & Ad.News 4639, 5107. Within the labor context federal courts have consistently favored internal resolution procedures in order to promote orderly settlement of disputes, to assure uniform processing and treatment of claims, and to avert whenever possible the expense and delay incident to resort to the courts. See generally Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), and Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967).[3] See also 29 U.S.C. § 173(d). ERISA also endorsed this policy by conferring broad managerial discretion upon the pension plan trustees, who are primarily responsible for devising and implementing claims procedure. See Toland v. McCarthy, 499 F.Supp. 1183 (D.Mass.1980), and Sample v. Monsanto Co., 485 F.Supp. 1018 (E.D.Mo.1980). Thus, "full and fair review" must be construed not only to allow a pension plan's trustees to operate claims procedures without the formality or limitations of adversarial proceedings but also to protect a plan participant from arbitrary or unprincipled decision-making.[4]
 
 
 21
 To afford a plan participant whose claim has been denied a reasonable opportunity for full and fair review, the plan's fiduciary must consider any and all pertinent information reasonably available to him. The decision must be supported by substantial evidence. The fiduciary must notify the participant promptly, in writing and in language likely to be understood by laymen, that the claim has been denied with the specific reasons therefor. The fiduciary must also inform the participant of what evidence he relied upon and provide him with an opportunity to examine that evidence and to submit written comments or rebuttal documentary evidence. If the fiduciary allows third parties to appear personally, the same privilege must be extended to the participant.[5]
 
 
 22
 In the case at bar, although the plan directed the local and national boards to promulgate written rules or regulations, both the national and local boards failed to do so. This omission required the district court to ascertain what procedure the board followed in processing Grossmuller's claim and to determine what information the board provided to him. The district court found that, in a letter dated August 15, 1977, the local board informed Grossmuller only that his benefits had been terminated on the ground that he was found to be gainfully employed. The board did not state upon what evidence it relied or invite Grossmuller to examine that evidence or to submit written comments or rebuttal documentary evidence. The board made no effort to ascertain any other facts or to interview Grossmuller himself. The appeal form sent to Grossmuller also did not provide him with any explanation of the factual basis used to support the decision or the manner by which he could challenge it. Finally, the district court found that the local board also violated its own past, unwritten practice by allowing a third party, the detective, to appear before it, even though it had refused Grossmuller's request to do likewise.
 
 
 23
 The district court correctly concluded from these findings that the absence of any written claims procedures, as well as the inadequacy of the pension plan's unwritten practices, deprived Grossmuller of the protections afforded by ERISA for his interests in the pension plan.
 
 III.
 
 24
 To remedy the plan's improper denial of Grossmuller's benefits, the court then directed the plan to restore Grossmuller to full entitlement to disability benefits, calculated from the date of termination as if he had not been severed from employment at the Budd Company. The district court also enjoined the plan from
 
 
 25
 "undertaking to terminate plaintiff's benefits on the basis of any information pertaining to accusations of gainful employment occurring prior to October 12, 1977 and ... from denying benefits in the future to plaintiff unless a procedure is adopted, and approved by the court, as meeting the requirements of notice of factual specifications for disqualification, as well as claimant's opportunity to perfect his entitlement thereto by rebutting the specific allegations and by presenting evidence in support of his claim."
 
 
 26
 This order is ambiguous. The injunction could be read to enjoin the plan from ever terminating Grossmuller's benefits on the basis of facts occurring prior to October 12, 1977. The injunction could also be interpreted to mean that, until the plan's claims procedure has been approved by the court, the plan could not terminate Grossmuller's benefits but that, following such approval, the plan could terminate Grossmuller's benefits if it determines pursuant to the approved procedures that he was gainfully employed prior to October 12, 1977. The latter, but not the former, construction lies within the discretion committed to the district court in forging equitable remedies. See Lemon v. Kurtzman, 411 U.S. 192, 93 S.Ct. 1463, 36 L.Ed.2d 151 (1973). See also Fed.R.Civ.P. 65(d). The question of Grossmuller's eligibility should be resolved by the plan in the first instance, not by the court, Wardle v. Central State Southeast Southwest Areas Pension Fund, 627 F.2d 820 (7th Cir.1980), cert. denied, 499 U.S. 1112, 101 S.Ct. 922, 66 L.Ed.2d 841 (1981), and the procedural deficiencies in the plan's claim process will not estop the plan from taking into account Grossmuller's alleged gainful employment prior to October 12, 1977. Upon remand the district court should enter an order prohibiting the plan from terminating Grossmuller's benefits until that court has approved the plan's claims procedure consistent with section 1133 and until Grossmuller has received full and fair review.
 
 IV.
 
 27
 We hold that the district court properly concluded that the plan's claims procedure failed to comply with ERISA's requirements for "full and fair review" of denial of benefits and that the district court did not abuse its discretion in awarding Grossmuller reinstatement to benefits. The district court's order enjoining the plan from ever terminating his benefits on the basis of events occurring prior to October 12, 1977, will be reversed and remanded for entry of an order in accordance with part III of this opinion. Accordingly, the district court order dated September 10, 1982, will be affirmed in part and reversed in part and the matter remanded to the district court with directions to remand the case to the plan for further proceedings consistent with this opinion.
 
 
 
 [1]
 The district court granted the plan's motion for summary judgment with respect to Grossmuller's substantive due process claim and held that the actual termination decision was not arbitrary. Id. at 710. The court also granted the plan's motion for summary judgment on Grossmuller's constitutional claim on the ground that his allegation of state action was frivolous. Id. at 711. Finally, the court denied the plan's motion for summary judgment on Grossmuller's procedural claims because it could not, as a matter of law, hold "that the plaintiff received adequate notice and a full and fair review." Id. at 710
 The district court granted the unions' and Budd Company's motions for summary judgment after determining that the parties had fulfilled their obligation to negotiate an agreement in compliance with ERISA. The court also dismissed Grossmuller's claim that the union breached its duty of fair representation because Grossmuller had failed to exhaust internal union remedies. See Grossmuller v. International Union, U.A.W., No. 80-297, slip op. at 73-74 (E.D.Pa. March 17, 1981).
 
 
 [2]
 The district court also awarded reasonable counsel fees and specified that consideration of a supplement to the petition for such fees would be deferred until this appeal was decided. See id. at 116
 
 
 [3]
 See also Laborers' International Union of North America v. W.W. Bennett Construction Co., 686 F.2d 1267, 1271, 1277 (7th Cir.1982) (emphasizing federal labor policy of encouraging voluntary accommodation of parties' differences); Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, 611 F.2d 580, 582-83 (5th Cir.1980) (noting that arbitration is an "informal" method for parties to "amicably" resolve disputes); and Smith v. Union Carbide Corp., 350 F.2d 258, 260 (6th Cir.1965) (observing that "[c]ourts favor arbitration as a means of promoting harmony in the relations between labor and management and of peacefully settling labor disputes")
 
 
 [4]
 Regulations promulgated by the Secretary of Labor pursuant to the directive in § 1133 impose other minimum requirements for claims procedures. For example, the claims procedure must apprise participants of relevant time constraints and may not contain any provision and may not be "administered in a way which unduly inhibits or hampers the initiation or processing of plan claims." 29 C.F.R. § 2560.503-1(b)(1)(iii) and (iv). Time limitations prescribed by a plan must be reasonable. See, for example, 29 C.F.R. § 2560.503-1(g)(3) and (h)(1)
 In addition, the trustees of a plan must communicate to the participant whose claim has been denied
 "(2) Specific reference to pertinent plan provisions on which the denial is based;
 "(3) A description of any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary; and
 "(4) Appropriate information as to the steps to be taken if the participant or beneficiary wishes to submit his or her claim for review."
 
 
 [29]
 C.F.R. § 2560.503-1(f)(2)-(4). The claims procedure must also allow a participant to
 "(i) Request a review upon written application to the plan;
 "(ii) Review pertinent documents; and
 "(iii) Submit issues and comments in writing."
 
 
 [29]
 C.F.R. § 2560.503-1(g)(1)(i)-(iii)
 These regulations became effective for claims filed on or after October 1, 1977, 42 Fed.Reg. 27429. Grossmuller filed his claim for benefits in 1973. The plan terminated Grossmuller's benefits in August of 1977. Hence, these regulations did not apply to the case at bar. The district court, however, considered the regulations to be applicable and held that the plan's review procedures failed to satisfy the "due process" requirements of § 1133 and its regulations. 547 F.Supp. at 115. Because we hold that the plan violated section 1133 of ERISA, however, the district court's error as to the applicability of the regulations in question and the due process clause do not require a reversal. See Bernitsky v. United States, 620 F.2d 948 (3d Cir.1980) (appellate court may affirm on any basis found in the record).
 
 
 [5]
 Although few appellate courts have examined what Congress meant by "full and fair review" under § 1133, that concept has been clarified frequently within the administrative law context. "Full and fair" does not necessarily require a "trial-like atmosphere complete with attorneys to challenge offered evidence and legally trained hearing officers to rule on evidentiary questions." Toney v. Reagan, 467 F.2d 953, 958 (9th Cir.1972), cert. denied sub nom. Mabey v. Reagan, 409 U.S. 1130, 93 S.Ct. 951, 35 L.Ed.2d 263 (1973). The decision-maker need not hear oral testimony; a written record will suffice. Guerrero v. State of New Jersey, 643 F.2d 148 (3d Cir.1981) (per curiam)
 However, to be "full and fair," the review must provide a claimant with knowledge of the opposing party's contentions and a reasonable opportunity to meet them. Robbins v. United States Railroad Retirement Board, 594 F.2d 448 (5th Cir.1979). "Full and fair" may also require the decision-maker to consider the position of both sides before rendering a decision, Billington v. Underwood, 613 F.2d 91 (5th Cir.1980) (per curiam), and may impose upon him the duty to develop a complete and impartial record. Clark v. Harris, 638 F.2d 1347 (5th Cir.1981).
 These interpretations of "full and fair" arose from varying language in different statutes. See, e.g., Robbins v. United States Railroad Retirement Board, supra (construing "fair hearing" under Railroad Unemployment Insurance Act, 45 U.S.C. § 355(c)), and Billington v. Underwood, supra (construing regulation promulgated under United States Housing Act, 42 U.S.C. § 1437 et seq.). However, the persistent core requirements of review intended to be full and fair include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision. See Morgan v. United States, 304 U.S. 1, 18-19, 58 S.Ct. 773, 776-777, 82 L.Ed. 1129 (1938).