**Lowell FOLKE, Plaintiff,**

v.

**Charles J. SCHAFFER, Administrator of Teamsters Pension Trust Fund, Defendant.**

**Civ. A. No. 84–215 CMW.**

United States District Court, D. Delaware.

Aug. 26, 1985.

---

John S. Grady, Dover, Del., for plaintiff.

Francis J. Trzuskowski of Trzuskowski, Kipp, Kelleher & Pearce, Wilmington, Del., for defendant.

## MEMORANDUM OPINION

CALEB M. WRIGHT, Senior District Judge:

This claim for early retirement benefits against a pension fund and its administrator is now before the Court on cross motions for summary judgment. The plaintiff, Lowell Folke ("Folke"), is a resident of Delaware and was a member of Teamsters Local No. 326, of Wilmington, Delaware, from 1969 to November, 1980. The defendant, Charles J. Schaffer ("Schaffer"), is the administrator of the Teamsters Pension Plan of Philadelphia & Vicinity (the "Plan"), which is the vehicle for administering the Teamsters Pension Trust Fund of Philadelphia and Vicinity (the "Fund").

## I. JURISDICTION

The Court has subject matter jurisdiction over the claims involved in this case by the jurisdictional provision of ERISA, 29 U.S.C. § 1132(e)(1). *See Reiherzer*

v. *Shannon,* 581 F.2d 1266 (7th Cir.1978); *Dimond v. Retirement Plan for Employees of Michael Baker Corp.,* 582 F.Supp. 892 (W.D.Pa.1983). While defendant Schaffer has stated in his answer that he "denies that this Court has jurisdiction under 29 U.S.C. § 1132", he has not alleged any specific facts as a basis for denying subject matter jurisdiction, nor has he briefed this issue on his motion for summary judgment. Any objection to personal jurisdiction or venue has been waived.[1]

■ Although ERISA does not explicitly require a plaintiff to exhaust his remedies under a pension plan before bringing suit, courts have read such a requirement into the statute. *See Amato v. Bernard,* 618 F.2d 559, 567–68 (9th Cir.1980); *Tomczyscyn v. Teamsters, Local 115 Health & Welfare Fund,* 590 F.Supp. 211, 215–16 (E.D. Pa.1984). In the present case, Folke did everything he could reasonably be expected to have done to convene an appeal hearing by the Fund's trustees. In view of the defendants' persistent refusal to grant Folke an appeal on his denied claim and Schaffer's view that an appeal would have been pointless, the Court finds that Folke has adequately complied with the exhaustion of remedies requirement.[2]

## II. FACTUAL BACKGROUND

On October 14, 1981, Folke filed a written application for early retirement benefits under the Plan. The processing of this application involved obtaining written confirmation of Folke's employment history from the Social Security Administration, and this information was not received by the Fund until February 11, 1982. On April 1, 1982, Schaffer requested information from Folke about his current employment status, and Folke responded on April 5, 1982, with the information that he was then employed doing construction and building maintenance work for Delmar Q.K. Distributors, Inc., in Wyoming, Delaware. On April 8, 1982, Schaffer advised Folke that the processing of his application for early retirement benefits had been completed and that Folke had earned 10.96 years of benefit service and 11 years of vesting service under the Plan. Schaffer also informed Folke, "the above Service [sic] will be sufficient for your benefits to be Vested [sic] until your actual retirement." Folke then retained counsel, who wrote to Schaffer on April 19, 1982 requesting that the Fund explicitly state whether Folke's application for early retirement benefits was being denied, so that an appeal could be taken, if necessary. On April 23, 1982, Schaffer replied that Folke's application for early retirement benefits was being denied because Folke was currently employed, and the Department of Labor's recently issued regulations on suspension of benefits did not permit a beneficiary of a pension plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA") to work in any capacity whatever while receiving early retirement benefits.

There followed a fruitless attempt by Folke, through his attorney, to convene an appeal hearing on the Fund's denial of his early retirement benefits. On May 3, 1982, Schaffer informed Folke's counsel that he would be notified as soon as a hearing was scheduled. On June 21, 1982, Folke's counsel wrote to Schaffer again requesting a date for a hearing but received no reply.

---

1. In any case, personal jurisdiction and venue would obtain under the minimum contacts analysis of *Internat'l. Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). In *Varsic v. U.S. Dist. Ct. for Cent. Dist. of Cal.,* 607 F.2d 245 (9th Cir.1979), the court stated that a fund may be "found" in a district, within the meaning of ERISA's venue provision, 29 U.S.C. § 1132(e)(2), if personal jurisdiction is properly asserted over the fund. On the basis of a minimum contacts analysis, the court concluded that the district court had personal jurisdiction over the fund, since the plaintiff-beneficiary performed his work and earned his pension credits in the district. *See I.A.M. Nat'l. Pension Fund v. Wakefield Indus., Inc.,* 699 F.2d 1254, 1257–59 (D.C.Cir.1983) (adopting *Varsic's* interpretation of meaning of "found" in 29 U.S.C. § 1132(e)(2)); *Turner v. C.F. & I. Steel Corp.,* 510 F.Supp. 537 (E.D.Pa.1981) (same).

2. Defendants state in their answer that they do not "at this time raise failure to exhaust administrative remedies as it appears there was mutual mistake by the parties."

Subsequently, in telephone conversations with Schaffer, Folke's counsel was informed that the Fund's trustees were not scheduled to meet and that there was no point in having a hearing, since Folke was not entitled to early retirement benefits. Folke then sought assistance from his Congressman, the Hon. Thomas Evans, a member of whose staff telephoned Schaffer in September, 1982, to inquire about Folke's case. Schaffer replied to this inquiry by his letter of September 15, 1982, which stated that, because Folke was currently employed, he was not entitled to early retirement benefits under the new suspension of benefits regulations adopted by the Fund. On April 18, 1984, Folke filed the complaint in this suit.

## III. ISSUES

At the time he applied for early retirement benefits, Folke was 51 years of age and had accumulated 11 years of vested service under the Plan. Both before and after the disputed amendment, the Plan provided that a participant who had attained 50 years of age and completed 10 years of vesting service was entitled to early retirement benefits, provided certain conditions regarding re-employment were fulfilled. Under the Plan undisputedly in effect in October, 1981,

> An Employee will not be considered to be in retirement in a calendar month if, in that calendar month, he is employed in the same industry, in the same trade or craft and in the same geographic area covered by the Plan, as when such benefits commenced, or by a Plan from which pension benefits are being received pursuant to the terms of a Reciprocal Agreement.

Teamsters Pension Plan of Philadelphia & Vicinity, article IV (1981).

Folke maintains that he is entitled to early retirement benefits under this provision and that this provision was in effect both at the time he applied for early retirement benefits and at the time his application was decided. Alternatively, Folke argues that, even if the Plan was amended by the time a decision was made on his application, he is entitled to early retirement

benefits under the old Plan, because he had supplied all the information required from him in October, 1981, and there was undue delay in processing his application. Finally, Folke maintains that he is entitled to early retirement benefits because the defendants failed to comply with the procedural due process guarantees of ERISA. The defendants assert that the quoted provision was amended, effective January 1, 1982, to provide that early retirement benefits are not available to any participant who is re-employed in any capacity whatsoever, and that any delay in the processing of Folke's application was due to reasons beyond their control.

## IV. DISCUSSION

The standard for reviewing the Fund's decision is whether it was arbitrary and capricious in light of the language of the Plan. *See Govoni v. Bricklayers, Masons & Plasterers International Union,* 732 F.2d 250, 252 (1st Cir.1984); *Rosen v. Hotel and Restaurant Employees & Bartenders Union,* 637 F.2d 592, 596 n. 5 (3d Cir.1981); *Wardle v. Central States, Southeast and Southwest Areas Pension Fund,* 627 F.2d 820, 823–24 (7th Cir.1980). Under article II, section A of the Plan, the approval of the trustees is required to receive benefits, and under article V, section D the trustees can require the information they deem reasonably necessary for making a decision about benefits to be supplied before a decision is made. Pursuant to this provision, the Fund requested confirmation of Folke's employment record from the Social Security Administration and information concerning Folke's current employment from Folke himself.

■ Under regulations enacted pursuant to ERISA and in effect at the time Folke applied for early retirement benefits, "[i]f a claim is wholly or partially denied, notice of the decision ... shall be furnished to the claimant *within a reasonable period of time after receipt of the claim by the plan.*" 29 C.F.R. § 2560.503–1(e)(1) (1981) (emphasis added). Schaffer's letter of April 8, 1982, which merely stated "[u]nder the provisions of the Pension Plan, the

above Service will be sufficient for your benefits to be Vested [sic] until your actual retirement," did not provide adequate notice of the Fund's decision to deny early retirement benefits. Nevertheless, Folke was informed of the Fund's decision two weeks later when Schaffer responded to his attorneys' request for a statement of the Fund's decision. The principal delay in processing Folke's application was caused by the time needed for the Social Security Administration to confirm Folke's employment history—approximately four months. Exclusive of this four month period, Folke's application was in the hands of the Fund approximately eight weeks before he received an unambiguous decision.

■ Nevertheless, under the provisions of 29 C.F.R. § 2560.503–1(e)(3) in effect at the time Folke's application was being processed, the time for processing an application

> will be deemed to be unreasonable if it exceeds 90 days after receipt of the claim by the plan, unless special circumstances require an extension of time for processing the claim.... In no event shall such extension exceed a period of 90 days from the end of such initial period.

Since Folke's notarized application was received by the Fund some time after October 19, 1981 and the Fund notified Folke of its decision on April 23, 1982, the Fund barely complied with the 180 day reasonable time requirement of the regulations. However, even if the time taken for processing Folke's claim is deemed unreasonable, the result will be the same for Folke, since, under 29 C.F.R. § 2560.503–1(e)(2), if notice of denial of a claim is not furnished within a reasonable time, the claim is to be deemed denied. Furthermore, since the Fund could not have made a decision before February 11, 1982, when it received confirmation of Folke's employment history from the Social Security Administration, any subsequent delay in processing Folke's application could not have caused him any harm if, as the Fund asserts, the Plan was amended effective January 1, 1982, to provide that no member who is employed in any capacity can receive early retirement benefits.

■ Under amendments to the ERISA regulations that became effective January 1, 1982, a plan was *permitted* to suspend the early retirement benefits of any beneficiary who was employed in any capacity. *See* 29 C.F.R. § 2530.203–3(a) (1982).[3] The defendants argue that the Plan was amended pursuant to these regulations at the trustees' meeting of February 4, 1982 to provide for suspending the early retirement benefits of any member who is employed, regardless of the nature of the employment, and that this amendment was made retroactive to January 1, 1982. Folke argues, however, that no such purported amendment could have been effective, because early retirement is an "accrued benefit" within the meaning of 29 U.S.C. § 1002(23) and, as provided by 29 U.S.C. § 1082(c)(8) and its tax counterpart, 26 U.S.C. § 412(c)(8), no plan amendment reducing accrued benefits can be effective unless it is first submitted to the Secretary of Labor and the Secretary either approves the amendment or fails to take action on it. 29 U.S.C. § 1002(23) defines an accrued benefit as the amount of the annual benefit that would commence at *normal retirement age*, or its actuarial-equivalent.[4] Un-

---

3. This section provides, in relevant part:

   A plan may provide for the suspension of pension benefits which commence prior to the attainment of normal retirement age ... for any reemployment and without regard to the provisions of section 203(a)(3)(B) and this regulation to the extent (but only to the extent) that suspension of such benefits does not affect a retiree's entitlement to normal retirement benefits payable after attainment of normal retirement age, or the actuarial equivalent thereof.

4. 29 U.S.C. § 1002(23) provides, in relevant part:

   The term "accrued benefit" means—(A) in the case of a defined benefit plan, the individual's accrued benefit determined under the plan and, except as provided in section 1054(c)(3) of this title, expressed in the form of an annual benefit commencing at normal retirement age....

   29 U.S.C. § 1054(c)(3) provides:

   For purposes of this section, in the case of any defined benefit plan, if an employee's accrued benefit is to be determined as an amount other than an annual benefit com-

der this definition, early retirement benefits would not be an accrued benefit, and the courts have so held. *See Bencivenga v. Western Pennsylvania Teamsters and Employers Pension Fund,* 763 F.2d 574, 577–78 (3d Cir.1985); *Sutton v. Weirton Steel,* 724 F.2d 406, 410 (4th Cir.1983); *Hernandez v. Southern Nevada Culinary and Bartenders Pension Trust,* 662 F.2d 617, 619–20 (9th Cir.1981). Thus, the alleged amendment to the Plan did not require the approval or acquiescence of the Secretary of Labor.

Folke challenges this conclusion by appealing to a 1984 amendment to ERISA, which provides that a plan amendment shall be treated as reducing accrued benefits if it eliminates or reduces an early retirement benefit.[5] However, this amendment does not apply to the plan years involved in this dispute.[6] Accordingly, 29 U.S.C. § 1082(c)(8) is not applicable to the Plan amendment at issue, and the defendants were not required to obtain the approval or acquiescence of the Secretary of Labor for the amendment to be effective.[7]

■ The question remains, however, whether the Fund did, in fact, amend the Plan and, if so, when.[8] The defendants advert to the trustees' meeting of February 4, 1982, but the minutes of this meeting do not record an amendment of the Plan specifically to provide that early retirement benefits would not be available to any participant who is employed in any capacity. Rather, the minutes merely indicate that the trustees authorized Schaffer "to take necessary action to have the Fund comply with the Regulations as they pertain to Normal Retirement and to institute a suspension of benefits policy for Early Retirement." At the trustees' meeting of July 21, 1982, Schaffer submitted a "redrafted regulation relating to Suspension of Benefits," which was made a part of the minutes. This item, which is entitled "Bulletin: Suspension of Benefit Regulations Adopted," was intended to inform union members and sponsors of the terms of the new ERISA regulations. Its final paragraph read:

> The regulations restrict only the suspension of pension benefits *after* a member's normal retirement age. Benefits of a member who is reemployed *before* his normal retirement age, may be suspended for any reemployment without regard to these regulations provided that such suspension does not affect the retiree's entitlement to normal retirement benefits

---

mencing at normal retirement age, or if the accrued benefit derived from contributions made by an employee is to be determined with respect to a benefit (without ancillary benefits) commencing at normal retirement age, the employee's accrued benefit, or the accrued benefits derived from contributions made by an employee, as the case may be, shall be the actuarial equivalent of such benefit or amount determined under paragraph (1) or (2).

5. *See* Pub.L. No. 98–397, § 301(a)(2) (1984), codified at 29 U.S.C. § 1054(g).

6. The effective date of the amendment for multi-employer plans such as the Teamsters Pension Plan of Philadelphia and Vicinity is the plan year, as of August 23, 1984, beginning the earlier of
> (1) the date on which the last of the collective bargaining agreements relating to the plan terminates ... or
> (2) January 1, 1987.
Pub.L. 98–397, § 302(b) (1984).
As of August 23, 1984, the date on which the last of the collective bargaining agreements ap-

plicable to the Plan terminates is December 31, 1987. Thus, the amendment does not apply to Plan years beginning earlier than January 1, 1987.

7. Folke also argues that the Fund failed to update the Fund's summary plan description to reflect the 1982 amendment. However, under the terms of 29 U.S.C. § 1024(b) an updated summary plan description need only be furnished to participants every five years. The Fund's latest summary plan description complies with this requirement, since it was published in July 1980. As to the requirement of 29 U.S.C. § 1024(b)(1) that summary descriptions of material changes in any terms of a plan be furnished to participants within 210 days after the end of the plan year in which the change is adopted, the publication of the Plan amendment in the Fall 1982 *Philadelphia Update* (discussed below) was sufficient.

8. Article VII of the Plan states in part that "[t]he Trustees may at any time or times modify, alter or amend the Pension Plan in any respect, retroactively or otherwise ...", but does not specify a method of amendment.

payable after attainment of normal retirement age.

This statement, which the minutes do not even explicitly adopt, falls short of an amendment to the pension plan. It does not state that early retirement benefits *will* be available to members who work but only that they *may* be suspended under the regulations. It is not until the Fall 1982 edition of the *Philadelphia Update,* the official publication of the Teamsters Health and Welfare Funds of Philadelphia and Vicinity, that the Fund clearly promulgated an amendment to the Plan. The "Bulletin" section of that publication includes a section entitled "Amendment to Pension Plan: Article IV, Re-employment of Retired Employee." The first sentence of the amendment reads: "A Retired Employee shall not be entitled to a retirement benefit for any month prior to his Normal Retirement Age in which he is employed." This publication may be deemed to have effectively amended the Plan.

█ The amendment itself does not indicate when it is to become effective. As stated in paragraph 14 of Schaffer's affidavit, it was the intention of the trustees to amend the Plan effective January 1, 1982. Under ERISA, the trustees have the authority to make amendments retroactively effective to the beginning of a plan year up to two years after the end of the year.[9] Given the stated intention of the trustees that the amendment have retroactive effect and their undoubted authority to make retroactive amendments under ERISA, the Court finds that the Plan was amended effective January 1, 1982 to provide that no retired employee is entitled to a retirement benefit for any month prior to his normal retirement age in which he is employed. Accordingly, because Folke was employed in 1982 at the time his application for early retirement benefits was considered, the Court holds that he was not entitled to early retirement benefits at that time.

However, this result does not imply that Folke was not entitled to early retirement benefits at some later date, for the Fund amended Article IV of the Plan again in 1983 to provide:

(A) A Retired Employee shall not be entitled to a retirement benefit for any month *PRIOR* to the earlier of his Normal Retirement Age, or his completion of thirty (30) years of Vested Service, in which he is employed in:

(i) An industry in which Employees covered by the Plan were employed and accrued benefits under the Plan as a result of such employment at the time that the payment of benefits commenced or would have commenced if the employee had not remained in or returned to employment, and

(ii) A trade or craft in which any Employee is or was employed at any time under the Plan....

*Philadelphia Update,* Fall 1983.

█ Whether or not Folke would have qualified for early retirement benefits under these provisions involves factual issues that cannot be determined here, for no evidence has been submitted by either side as to the relationship of Delmar Q.K. Distributors, Inc. to industries in which employees covered by the Plan have been employed or as to the relation of the construction and maintenance work Folke performs for this company to the trades or crafts in which employees have been employed under the Plan. For that matter, it has not even been shown whether Folke continues to work for Delmar Q.K. Distributors, Inc. or, if not, how long he continued to do so. Thus, summary judgment cannot be granted on the issue of whether Folke was entitled to early retirement benefits under the 1983 amendment to article IV of the Plan.

Where the factual issues are not sufficiently developed on the record below for the Court to enter judgment, a remand is appropriate. *See Beggs v. Mullins,* 499 F.Supp. 916 (S.D.W.Va.1980). Accordingly, the Court will remand the issue of Folke's entitlement to early retirement benefits under the 1983 amendment to the trustees for reconsideration in light of this opinion.

9. *See* 29 U.S.C. § 1082(c)(8).

Folke also contends that he is entitled to early retirement benefits because of the defendants' violation of the procedures for processing claims set out in 29 U.S.C. § 1133 and 29 C.F.R. § 2560.503–1. These provisions require written notice of a claim denial setting forth specific reasons for the denial and an opportunity for a full and fair review of the denial within 60 days. There can be no doubt that the Fund's treatment of Folke's claim was woefully lacking in procedural due process. After first assuring Folke's attorney that an appeal hearing would be held, it then refused to convene one. Nevertheless, however reprehensible the Fund's treatment of Folke may have been, it does not entitle Folke to his early retirement benefits. Under 29 C.F.R. § 2560–503–1(h)(4), if a decision on review is not made in a timely manner, as specified in the regulations, the claim is deemed denied on review. A claimant's appropriate recourse is then to seek review of the denial by the district court.

Folke's reliance on *Grossmuller v. International Union, United Automobile, Aerospace and Agricultural Implement Workers,* 715 F.2d 853 (3d Cir.1983), in this connection is misplaced. In *Grossmuller* the plaintiff's disability benefits were terminated by a pension plan when the plan allegedly discovered that Grossmuller was employed as a bartender, relying on evidence supplied by a private investigator. The plan did not have a written claims review procedure, and while it did allow Grossmuller to appeal its decision, it did not allow him to appear personally at the appeal hearing, even though the private investigator was allowed to testify. The Third Circuit affirmed the district court's decision that these procedural deficiencies deprived Grossmuller of the "full and fair review" guaranteed by ERISA, and also upheld the reinstatement of Grossmuller's benefits. However, the Third Circuit reversed part of the district court's order to make it clear that Grossmuller's benefits were reinstated pending the outcome of a review by the plan that complied with ERISA's procedural safeguards.

There are two principal differences between *Grossmuller* and the present case.

First, *Grossmuller* involved suspension of benefits that were already being received, whereas Folke was making an initial application for benefits. Second, the reinstatement of Grossmuller's benefits was appropriate only because the procedural deficiencies of the plan's review process had prevented Grossmuller from presenting evidence that might have affected its outcome. In the present case, however, there is no additional information or testimony relevant to Folke's application for early retirement benefits under the 1982 Plan amendment that could have been presented at a review hearing. Under the 1982 Plan amendment, the undisputed fact that Folke was currently employed conclusively prevented him from receiving early retirement benefits. Thus, Folke's claim for early retirement benefits on procedural due process grounds must be denied.

An order will issue in accordance with this opinion.