Todd **HARRIS,** Plaintiff,

v.

**AETNA LIFE INSURANCE COMPANY,** Defendant.

**No. CIV.A.1:04 CV 1201BBM.**

United States District Court,
N.D. Georgia,
Atlanta Division.

July 14, 2005.

Heather K. Karrh and Michael J. Hofrichter of Rogers, Hofrichter & Karrh, Fayetteville, GA, for Todd Harris, Plaintiff.

Patrick L. Lail and Kelly M. Hundley of Elarbee, Thompson, Sapp & Wilson, Atlanta, GA, for Aetna Life Insurance Company, Defendant.

### ORDER

MARTIN, District Judge.

This action alleging wrongful denial of disability insurance benefits and breach of fiduciary duty under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, is before the court on Defendant's Motion for Summary Judgment [Doc. No. 24].

### I. *Factual and Procedural Background*

The facts presented here are excerpted from the parties' Statements of Material Facts as well as the court's independent review of the record and are undisputed except where otherwise noted.[1]

Plaintiff Todd Harris ("Plaintiff" or "Harris") brings this action against Defendant Aetna Life Insurance Company ("Defendant" or "Aetna") for wrongful denial of disability benefits and breach of fiduciary duty under ERISA. *See* 29 U.S.C. §§ 1001 *et seq.*

Harris was employed by Accenture, Inc. ("Accenture") as an Associate Partner. In his position, Harris was responsible for selling and delivering consulting services to client organizations. To perform his job duties, Harris was expected to carry and use a laptop computer; travel to clients' sites each week; work for at least twelve to fourteen hours per day; and lift up to fifty pounds or more when traveling.

Accenture maintained a disability insurance policy for its employees through Aetna (the "Policy"). To receive disability benefits under the Policy, an insured must satisfy the definition of "Total Disability," which provides that, prior to becoming a retired partner:

You are not able, solely because of injury or disease, to work at your own occupation. You will not be deemed to be performing the material duties of your own occupation on any day if: you are performing at least one but not all of the material duties of your own occupation (full-time or part-time); and solely due to disease or injury, your income is 80% or less of your predisability earnings.

In April 1997, Harris was diagnosed with the Human Immunodeficiency Virus ("HIV"). Since his diagnosis, Harris has been under the care of infectious disease specialists, including Dr. Steven Marlowe ("Marlowe"), and has been on and off anti-

---

**1.** The court is mindful of its duty to construe any disputed facts in favor of the non-moving party, the plaintiff. *See Stewart v. Happy Her-* *man's Cheshire Bridge, Inc.,* 117 F.3d 1278, 1285 (11th Cir.1997).

viral treatment. Marlowe recorded that Harris has experienced various physical and psychiatric symptoms, including fatigue, nausea, night sweats, work stress, and depression. On April 1, 2002, Harris's psychiatrist, Dr. R. Michael Prudent ("Prudent"), diagnosed Harris with major depression. Prudent recorded that Harris suffered from a depressed mood, decreased focus, feelings of hopelessness and helplessness, and was prone to tearfulness.

Harris continued working at Accenture until May 27, 2002. A few months later, on August 8, 2002, Harris applied for long-term disability benefits due to depression. In support of his claim, Harris submitted an Attending Physician's Statement dated August 16, 2002, in which Prudent listed Harris's diagnosis as depression, described his symptoms, and estimated that Harris could return to his own occupation by November 30, 2002. Harris also submitted a Mental Health Provider's Statement from Prudent that provided the same information but listed Harris's prognosis for returning to his own occupation as "guarded." Additionally, Prudent submitted a letter dated September 12, 2002, which summarized the treatment Prudent had provided Harris—twice weekly psychotherapy and medication, including Prozac and Wellbutrin. In addition to restating Harris's symptoms, Prudent further concluded that Harris was not "emotionally capable of returning to the work environment, especially in light of the demanding nature of his profession[,] which includes travel 4–5 days of every work week." Based on these submissions, Aetna awarded Harris long-term disability benefits effective August 26, 2002.

On September 26, 2002, Aetna referred Harris's file for a psychiatric review, inquiring as to whether there was "enough medical information on file to render a thorough medical claim analysis." An Aetna employee, known only by his/her initials, KYM, reviewed Harris's claim file and summarized his/her findings: "This claimant appears to have a limited work capacity to perform the usual duties of his own occupation [at] this time [due to] his mental condition."

Aetna informed Harris that he should continue to provide Aetna with any new information regarding his condition. On January 31, 2003, Harris provided Aetna with an updated Mental Health Provider's Statement from Prudent, in which Prudent restated Harris's symptoms; listed his current medications, Effexor and Wellbutrin; and noted that Harris had experienced some improvement. However, Prudent also indicated that the prognosis for Harris to return to his own occupation was "poor" and specifically stated that Harris should not return to work until November 1, 2003, almost a year later than the date Prudent had originally listed. Additionally, Harris submitted a letter dated April 23, 2003 from Prudent, in which Prudent summarized the treatment he had provided to Harris—continued psychotherapy and medication, including Effexor, Wellbutrin, and clonazepam. Neither the January 31, 2003 statement nor the April 23, 2003 letter offered an express explanation for Prudent's postponement of Plaintiff's return to work.

Harris submitted a Claim Questionnaire, dated March 31, 2003, in which he stated that he was prevented from performing his own occupation due to "limited concentration/stamina[;] significant fatigue from HIV infection; [and] inability to maintain healthy lifestyle due to work demands .... " Harris further stated that he was prevented from engaging in any gainful employment due to his "current emotional state from HIV status; lack of support; anxiety[;] and depression." On the same questionnaire, Harris noted that he had begun exercising; could take care of his

personal grooming needs; and was performing some chores, such as cooking, shopping, and doing laundry. Harris also indicated that he would be interested in training for real estate work.

After Harris submitted this Questionnaire, Aetna began investigating Harris's claim because Aetna asserts that Harris "changed his reason for disability." Specifically, Aetna contends that Harris originally claimed he was disabled due to depression, but that he "changed the focus of his impairment, claiming now that his HIV status and the fatigue from HIV infection constituted his impairment." Accordingly, Aetna conducted surveillance over several days during April, May, and June 2003. On those days, Harris was seen driving, going to the post office and grocery store, and spending time at home.

Subsequently, Aetna's Medical Director, Dr. Amy Hopkins ("Hopkins"), an occupational specialist, reviewed Harris's claim file. In a memo dated July 10, 2003, Hopkins summarized her findings. Although Hopkins noted that Harris had HIV, she observed that Harris's condition was stable because he was tolerating his medications and occasionally not taking medications at all, had good laboratory results in terms of his CD-4 cell count[2] and viral load,[3] and was not experiencing facial wasting. Hopkins also opined that because Harris was planning a trip to Panama, "presumably his health was fairly good."[4] Hopkins provided no opinion regarding Harris's psychiatric condition, acknowledging that Harris's "current mental health status ... is outside my area of expertise." On July 16, 2003, Aetna terminated Harris's disability benefits due to "lack of objective medical evidence" in support of his claim for disability benefits.

On December 15, 2003, Harris appealed Aetna's termination of his benefits. In support of his appeal, Harris submitted various affidavits and letters from Prudent. Dr. Dennis Melton ("Melton"), Harris's infectious disease physician at the time, and himself.

Prudent's letter stated:

Mr. Harris continues to experience marked difficulty with symptoms of major depression. These include depressed mood, decreased concentration, inability to maintain adequate focus and attention, frequent tearfulness, hopeless feelings, some suicidal ideations, increased sleep, decreased interest in usually pleasurable activities (anhedonia), decreased energy, avoidance of social situations and decreased attention to activities of daily living.

Prudent noted that Harris had been undergoing psychotherapy and was taking medications, including Lexapro, Provigil, Wellbutrin, and clonazepam. Additionally, Prudent addressed the results of Aetna's surveillance of Harris and stated that he had actually encouraged Harris "to do as much physical activity as he wants ... in order to stimulate his interests and possibly rekindle some of the spark of his former self." Yet again, Prudent remarked on Harris's inability to perform his occupation, noting that it required him to travel extensively and work long hours, which Prudent stated would be "impossible" for Harris.

Melton's Affidavit stated that "Harris suffers from advanced HIV disease" due to

---

2. CD-4 cells are white blood cells, important to the function of the immune system. HIV attacks CD-4 cells, resulting in a decline in the quantity of the cells.

3. Viral load measures the amount of HIV in an infected individual's blood. An increase in the amount of HIV in the bloodstream results in a higher viral load.

4. Harris denies that he traveled to Panama.

"a very low CD–4 cell count, which has recently been below 200."[5] Melton also listed Harris's associated symptoms, including profound and debilitating fatigue; night sweats; chronic diarrhea resulting in dehydration and frequent incontinence; chronic pain in his hands, ankles, and feet; frequent and painful sinus infections; and cognitive difficulties that impair his concentration, memory, communication,. and ability to follow directions and complete tasks. Based on these observations, Melton determined that Harris was totally disabled.

Additionally, in an affidavit, Harris provided a personal account of the effects his physical and psychiatric symptoms have had on his life.

On March 22, 2004, Aetna issued a final denial of Harris's claim for disability benefits. In its denial letter, Aetna cited the reviews of Dr. Oyebode Taiwo ("Taiwo"), an occupational specialist, and Dr. Mark Schroeder ("Schroeder"), a psychiatrist, who were asked to review Harris's claim file after he submitted his appeal.[6] Each examiner submitted a report summarizing his findings. In his report, Taiwo stated the following as "Recommendations/Conclusions:"

> Although Mr. Harris has a diagnosis of HIV, his physician's records and his level of physical activity observed on surveillance video does [sic] not support any physical incapacitation that would prevent him from performing sedentary work.
>
> Additional testing or medical information that would be helpful to assess the severity of his condition and its impact on his ability to work would include ob-

jective documentation of advanced HIV disease with evidence of significant loss of function supported by physical findings, diagnostic studies and appropriate objective assessment of his cognitive function.

> Because of his diagnosis of depression, I will defer to the psychiatrist to determine the impact of his me[n]tal status on his ability to work.

In his report, Schroeder stated that

> [t]he medical documentation in the claim file does not substantiate psychiatric restrictions or limitations that would prevent [Harris] from performing his own occupation on a full-time basis after 7–16–03. Additional information relevant to a further consideration of this claim would include objective evidence addressing [Plaintiff's] psychiatric and cognitive capacities in the time period in question.

Aetna did not provide the reports of Taiwo and Schroeder to Harris before it issued its final denial of Harris's claim for disability benefits.

Harris asserts that Aetna's denial of his claim was wrongful, and that in denying his claim, Aetna breached its fiduciary duty. The court now considers Aetna's motion for summary judgment.

## II. *Motion for Summary Judgment*

Defendant has moved for summary judgment, asserting that its denial of Plaintiff's claim for long-term disability benefits was proper. Plaintiff contends that Defendant failed to provide him with a full and fair review and that Defendant's denial of his claim was wrongful.

---

**5.** Melton stated that a person with a CD–4 cell count of less than 200 is classified as having AIDS.

**6.** Taiwo and Schroeder were asked to review Harris's claim file in February 2004. Taiwo's

report is dated February 25, 2003, but the court believes it should have been dated February 25, 2004, as the report states that Plaintiff's case was referred on February 19, 2004.

## A. Applicable Legal Standard

Summary judgment is proper "if ... there is no genuine issue as to any material fact" and "the moving party is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). In considering a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The court is mindful that "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Id.* The plaintiff must do more than show some level of doubt as to the material facts. "The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. 2505. As such, the non-movant may not avoid summary judgment with evidence that is "merely colorable or is not significantly probative." *Raney v. Vinson Guard Serv., Inc.*, 120 F.3d 1192, 1196 (11th Cir.1997).

If the nonmoving party fails to "make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof," then the court must enter summary judgment for the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Accordingly, "Rule 56(e) ... requires the nonmoving party to ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)).

## B. Full and Fair Review

Plaintiff contends that Defendant failed to provide him with a full and fair review of his claim for long-term disability benefits, necessitating remand of his claim to Defendant for another review. Defendant asserts its review of Plaintiff's claim was full and fair.

An employee benefit plan governed by ERISA must

(1) provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2) afford a reasonable opportunity to any participant whose claim for benefits has been denied for a *full and fair review* by the appropriate named fiduciary of the decision denying the claim.

29 U.S.C. § 1133 (emphasis added). The Department of Labor has promulgated regulations to define what constitutes full and fair review. Full and fair review includes the right to review "all documents, records, and other information relevant to the claimant's claim for benefits," 29 C.F.R. § 2560.503–1(h)(2)(iii), and the right to an appeal that takes into account "all comments, documents, records, and other information submitted by the claimant relating to the claim." 29 C.F.R. § 2560.503–1(h)(2)(iv). "[T]he persistent core requirements of [full and fair] review ... include knowing what evidence the decision-maker relied upon, having an opportunity to address the accuracy and reliability of that evidence, and having the decision-maker consider the evidence presented by both parties prior to reaching and rendering his decision." *Grossmuller v. Int'l Union, United Auto. Aerospace & Agric. Implement Workers of Am., Local 813*, 715 F.2d 853, 858 n. 5 (3d Cir.1983). The procedures set forth in ERISA and its related regulations "were intended to help claimants process their claims efficiently and fairly" and provide a claimant the opportunity to "adequately prepare him-

self for any further administrative review, as well as an appeal to the federal courts." *Richardson v. Cent. States, S.E. & S.W. Areas Pension Fund,* 645 F.2d 660, 665 (8th Cir.1981).

As noted above, on December 15, 2003, Plaintiff appealed Defendant's termination of his disability benefits. Subsequently, in February 2004, Defendant requested that two independent medical examiners, Taiwo and Schroeder, evaluate Plaintiff's claim file. After receiving the reports from Taiwo and Schroeder, Defendant issued a final denial of benefits to Plaintiff. Plaintiff never had an opportunity to submit additional evidence or respond to the reports of Taiwo and Schroeder. Plaintiff asserts that Defendant's practice constituted "sandbagging," *see Marolt v. Alliant Techsys., Inc.,* 146 F.3d 617, 620 (8th Cir.1998), and thus deprived him of the opportunity for a full and fair review. Defendant asserts it complied with ERISA regulations.

Although the Eleventh Circuit Court of Appeals has stated that *post hoc* explanations for benefits denials are generally without merit, *see Marecek v. BellSouth Telecomms., Inc.,* 49 F.3d 702, 706 (11th Cir.1995), the court has not expressly ruled on whether Defendant's specific action—failing to provide Plaintiff the opportunity to respond to evidence acquired after he submitted his appeal—is improper. Plaintiff contends that this court should apply the reasoning of the Eighth Circuit Court of Appeals in *Abram v. Cargill, Inc.,* 395 F.3d 882 (8th Cir.2005). In *Abram,* after a disability claimant filed her appeal, the defendant requested that a medical examiner, who had previously evaluated claimant, review evidence the claimant submitted in support of her appeal. *Id.* at 885. He did so and found the new evidence to be flawed. *Id.* On the basis of the examiner's findings, the defendant denied the disability claim. *Id.* The Eighth Circuit held that the defendant had violated ERISA's full and fair review require-

ments by not providing claimant the opportunity to respond to evidence acquired after her appeal opportunity had closed, and the court remanded the case to the defendant. *Id.* at 886. In reaching its decision, the *Abram* court focused on the need for "meaningful dialogue" between plan administrators and beneficiaries in order to ensure a full and fair review and stated that "[t]here can hardly be a meaningful dialogue between the claimant and the Plan administrators if evidence is revealed only after a final decision." *Id.*

However, Defendant asserts that Plaintiff's claim should not be remanded because it was merely complying with the mandates set forth in 29 C.F.R. § 2560.503–1(h)(3)(iii) and (v), and it could not provide the reports of Taiwo and Schroeder to Plaintiff without creating inefficiency. Title 29 C.F.R. § 2560.503–1(h)(3)(iii) and (v) state:

(3) Group health plans. The claims procedures of a group health plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless, in addition to complying with the requirements of paragraphs (h)(2)(ii) through (iv) of this section, the claims procedures-

. . . . .

(iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, . . . the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgement;

. . . . .

(v) Provide that the health care professional engaged for purposes of a consultation under paragraph (h)(3)(iii) of this

section shall be an individual who is neither an individual who was consulted in connection with the adverse benefit determination that is the subject of the appeal, nor the subordinate of any such individual . . . .

29 C.F.R. § 2560.503–1(h)(3)(iii) & (v).[7] Neither party disputes that Defendant properly sought the assistance of independent health care consultants when it requested that Taiwo and Schroeder examine Plaintiff's claim file. Defendant argues, though, that it could not also comply with 29 C.F.R. § 2560.503–1(h)(2)(iii) and (iv), at least with regard to providing Plaintiff copies of the examiners' reports, because doing so would be illogical. Specifically, Defendant argues that

> Plaintiff's proposed process would require endless interchanges between the fiduciary and the claimant, making a final decision almost impossible. Each successive *review* by the fiduciary would be subject to the claimant's critique and the opportunity to submit further *evidence*, which must then be *reviewed* by the fiduciary, etc.

Stated another way, Defendant attempts to escape complying with 29 C.F.R. § 2560.503–1(h)(2)(iii) and (iv) by arguing that to do so would be burdensome.

While this court certainly shares Defendant's desire to avoid an interminable review process, the court is unaware of any authority that would allow it to declare a portion of a regulation invalid because it can be burdensome, and Defendant has not advised the court of any such authority. Moreover, the court does not agree that complying with all relevant portions of the regulations governing Plaintiff's claim is as impractical as Defendant asserts. In fact, in this case, all Defendant would have to do to satisfy the regulatory requirements is to give Plaintiff an opportunity to respond to the reports of Taiwo and Schroeder. The court recognizes that it is possible that Plaintiff would subsequently submit additional medical evidence supporting his claim for disability benefits, perhaps necessitating additional stages of review by an independent health care consultant, and the court agrees with Defendant that perhaps the regulations could have been written in a way so as not to result in such possible inefficiency. However, the court presumes that a claimant will not unduly delay the decisionmaking process by engaging in continuous submission of new medical evidence because he will be motivated by his own desire to receive a benefits determination as quickly as possible.

Additionally, Defendant argues that *Abram* is factually distinguishable from the present case and therefore its holding is inapplicable. Specifically, Defendant notes that in *Abram*, "the review committee in that case generated additional medical *evidence* which was not provided to the plaintiff; in this case, Aetna merely provided all of the evidence to physicians for *review* as required by ERISA regulations." The court acknowledges that the requirements of 29 C.F.R. § 2560.503–1(h)(3)(iii) and (iv) were not at issue in *Abram*, or at least that the court did not discuss these regulatory requirements. Nevertheless, *Abram* and this case are factually similar in all material ways because, in both cases, the observations of medical examiners, which were submitted after the claimants' opportunities to present evidence on appeal had closed, were integral in the defendants' decisions to deny benefits. This court, like the *Abram* court, is mindful of its duty to maintain "meaningful dialogue" between Plaintiff and Defendant and be-

---

**7.** Although these regulations appear in the section governing group health plans, they also apply to disability plans, such as the Policy. *See* 29 C.F.R. § 2560.503–1(h)(4).

lieves that Defendant's failure to provide Plaintiff an opportunity to respond to the reports of Taiwo and Schroeder prevented the necessary exchange of information required for a full and fair review.

In sum, the court finds that Defendant's failure to provide the examiners' reports to Plaintiff violated ERISA's requirement for a full and fair review, and the court therefore finds that Plaintiff's request for remand is justified. Accordingly, Defendant's Motion for Summary Judgment is DENIED, and Plaintiff's case is remanded to Defendant. Plaintiff should be provided an opportunity to file any additional evidence that responds to or rebuts the contents of the examiners' reports before Defendant's further consideration of Plaintiff's claim for long-term disability benefits.

### III. *Summary*

For the foregoing reasons, Defendant's Motion for Summary Judgment [Doc. No. 24] is DENIED. The case is remanded to the Defendant for reconsideration of Plaintiff's claim for long-term disability benefits.